IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

GERALD KOHN, et al.,                              :

        Plaintiffs                          :

                               :

        vs.                                   :          CIVIL NO. 1:CV-11-0109

                               :

SCHOOL DISTRICT OF THE CITY OF          :
HARRISBURG, et al.,
        Defendants                          :

*M E M O R A N D U M*

I.   *Introduction*

       The plaintiffs are Gerald Kohn, Julie Botel, and Rebecca Hostetler.  Kohn is

the former superintendent of the Harrisburg School District, Botel the deputy

superintendent, and Hostetler the assistant superintendent.  They brought this suit to

contest the termination of their employment.  The action was filed in state court and

removed here by the defendants under our federal question jurisdiction.  *See* 28 U.S.C.

§§ 1331 and 1446(b) and (c).  After removal, Plaintiffs filed an amended complaint.

       The defendants are the School District; the District's Board of Control and

its members, Gloria Martin-Roberts, Herbert Goldstein, Autumn Cooper, Sanford Long,

Jennifer Smallwood, Roy E. Christ, and Esther E. Edwards; the "Elected School Board"

and its members, Lola D. Lawson, Lionel Gonzalez, Wayne L. Henry, Randy King, Jeffrey

Moore, Tiffiney Penn, Patricia Whitehead-Myers, Roy E. Christ, and Esther E. Edwards.

Also named as a defendant is Linda D. Thompson, the Mayor of the City of Harrisburg.

Plaintiffs were terminated by a vote of the seven-member Board of Control without notice or a hearing.  In their amended complaint, all three plaintiffs join in seven causes of action, with the gravamen of those claims being that Plaintiffs could not be discharged at will and had a right to notice and a hearing before they could be discharged.  Plaintiffs base their claims on the Due Process Clauses of the federal and state Constitutions, the state School Code, the Pennsylvania Local Agency Law, and contract.  Kohn makes a separate claim against Mayor Thompson that she violated his right to due process by publicly stigmatizing him in connection with his discharge.

Conversely, Defendants maintain that Plaintiffs were at-will employees who could be fired at any time without any process being due them and that therefore their discharges are not actionable.  We are considering five motions to dismiss under Fed. R. Civ. P. 12(b)(6), one filed by the School District, one by Christ and Edwards (members of both the Board of Control and the Elected School board), one by the Elected School Board and its members, one by the Board of Control and its members except for Christ and Edwards, and one by Mayor Thompson.  The Board of Control has also filed a motion to dismiss under Fed. R. Civ. P. 12(b)(5).

II.   *Standard of Review*

On a motion to dismiss under Rule 12(b)(6), "[w]e 'accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and

determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'" *Byers v. Intuit, Inc.*, 600 F.3d 286, 291 (3d Cir. 2010)(quoted case omitted).  The court is not limited to evaluating the complaint alone; it can also consider documents attached to the complaint, matters of public record, and indisputably authentic documents.  *Delaware Nation v. Pennsylvania*, 446 F.3d 410, 413 n.2 (3d Cir. 2006).

With this standard in mind, we present the background to this case, as Plaintiffs allege it.

III.   *Background*

In pertinent part, Plaintiffs allege as follows.  "In or around 2000, the Harrisburg School District had the lowest Pennsylvania System of State Assessment ("PSSA") scores of all the school districts in the Commonwealth of Pennsylvania.  The PSSA is an assessment test used to measure a student's attainment of the academic standards while also determining the degree to which school programs enable students to attain proficiency of the standards."  (Am. Compl. ¶ 34).  "In addition, the Harrisburg School District had a number of other failing organizational functions and statistics.  For example, more students dropped out of school than graduated."  (*Id.* ¶ 35).

"In an effort to rehabilitate the School District's, and other Commonwealth school districts', continually failing performance and history of low PSSA scores, the Pennsylvania General Assembly enacted the Education Empowerment Act (Act No. 2000-16)("EEA"), effective July 1, 2000," 24 Pa. Stat. Ann. § 17-1701-B to § 17-1716-B (West 2006 & West Supp. 2011).

"The Harrisburg School District was determined to have a '[h]istory of extraordinarily low test performance' defined by the EEA as a combined average of sixty percent (60%) or more of students scoring in the 'below basic level' of performance on the PSSA in math and reading in the most recent two school years." (*Id.* ¶ 38). Pursuant to the EEA, the School District was certified in July 2000 as an "education empowerment district." (*Id.* ¶ 39).

Under the EEA and an amendment to that act, the mayor of the City of Harrisburg, then Stephen R. Reed, assumed control of the School District on December 19, 2000. (*Id.* ¶ 40). The EEA provided for a five-member Board of Control appointed by the mayor to run the District, except for the levying of taxes, which was left to the Elected School Board. (*Id.* ¶ 41). A 2007 amendment to the EEA expanded the Board of Control to seven members, five appointed by the mayor and two from the Elected School Board to be selected by the members of the Elected School Board. (*Id.* ¶ 42).[1]

Under the EEA, Mayor Reed appointed a school district "Empowerment Team" to create the "School District Improvement Plan" required under the act. (*Id.* ¶ 43). The Improvement Plan became effective on August 31, 2001. (*Id.* ¶ 48). The Plan "acknowledged that the School District had come under the EEA because greater than 50% of the district's students scored in the lowest quartile on the PSSA for two consecutive years." (*Id.* ¶ 49). The Plan "listed as its first and primary goal to reduce the

---

[1]    The mayor's representatives on the board were to "serve at the pleasure of the mayor." 24 Pa. Stat. Ann. § 17-1707-B(b)(3)(West Supp. 2011).

4

percentage of students scoring in the lowest group on the PSSA to less than 50%." (*Id.* ¶ 51).  The Plan also acknowledged that "the district's chronic leadership and management issues" had to be addressed.  (*Id.* ¶ 50).

The School District and the Board of Control conducted a national search for a superintendent.  (*Id.* ¶ 58).  In July and August 2001, the School District and the Board of Control hired Kohn to be the superintendent and Botel to be the deputy superintendent.  (*Id.* ¶ 59).  Kohn and Botel signed written agreements for five-year terms with an option for another five years.  (*Id.* ¶ 61).  There were never any complaints about their performance during this original employment period.  (*Id.* ¶ 62).

In December 2005, the School District and the Board of Control exercised the option to renew Kohn's and Botel's contracts for another five years, with an option for a further five-year term.  (*Id.* ¶¶ 65-66).  Kohn's new agreement started on July 16, 2006, and was to end on July 15, 2011.  Botel's new agreement began on August 7, 2006, and was to end on August 6, 2011.  (*Id.* ¶ 67).  In December 2005, the School District and Board of Control entered into a five-year employment agreement with Hostetler to serve as assistant superintendent starting December 1, 2005, and ending on December 1, 2010.  (*Id.* ¶ 68).  The three agreements are attached to the complaint as exhibits, and all three are between the respective plaintiff and the School District.

All three agreements contain an identical provision.  Quoting from Kohn's agreement, the provision reads as follows:

> Dr. Kohn's employment may be suspended or terminated by
> THE SCHOOL DISTRICT for neglect of duty, incompetency,

> intemperance or immortality (sic) as set forth in the
> Pennsylvania School Code of 1949, *as amended*; 24 P.S.
> §10-1080.  In any job action, DR. KOHN is entitled to any and
> all rights available under the Pennsylvania Local Agency law
> and the Pennsylvania School Code of 1949, as amended; any
> appeal of said job action shall be taken to the Court of
> Common Pleas of Dauphin County and to the Pennsylvania
> appellate courts, if necessary.  THE BOARD [of Control] shall
> not arbitrarily or capriciously call for the dismissal of DR.
> KOHN and he shall in any event have the right to written
> charges, notice of hearing, and fair and impartial hearing and
> appeal as provided for above.  At any such hearing or appeal,
> DR. KOHN shall have the right to be present and to be heard
> and to be represented by counsel of his choice at SCHOOL
> DISTRICT expense.

(Am. Compl. ¶ 70)(quoting Kohn Employment Agreement, ¶ 12, Am. Compl., Ex. A).  As

noted, the Botel and Hostetler agreements contain the identical provision in paragraph 9

(Am. Compl., Ex B) and paragraph 8, (Am. Compl., Ex. C), respectively, except of

course, that in their contracts Botel and Hostetler are named instead of Kohn.  This

provision essentially prohibits termination of the plaintiffs except for cause and only after

notice and a hearing.

"Over the next several years following renewal of the Employment

Agreements and the hiring of Hostetler, under the leadership of plaintiffs the School

District continued to implement the provisions and strategies of the Improvement Plan –

resulting in steady progress toward and meeting the Goals set by the Improvement Plan,

including dramatic improvement in the academic performance of district students." (*Id.* ¶

77).  "The Education Empowerment Annual Reports of the PDE specifically noted that

'since the implementation of the EEA in 2000, significant performance gains have been

realized.'"  (*Id.* ¶ 78).  "The Education Empowerment Annual Report for the 2006-2007

School Year by [the Pennsylvania Department of Education] noted specifically for

Harrisburg School District: 'Student performance under EEA guidelines has improved

gradually each year for the past six years.'"  (*Id.* ¶ 79).  "Each year the Education

Empowerment Annual Report made note of 'Significant Accomplishments' of the

Harrisburg School District, including the increase in college acceptance rates, the

increase in enrollment, the development of a comprehensive Literacy Handbook,

advanced training for teachers and principals and the Central Office Staff's weekly

Learning Walks through all schools in the district."  (*Id.* ¶ 80).

   "Based on the [Pennsylvania Department of Education's] PSSA data, the

Harrisburg School District ranked eighth out of the state's 498 school districts in

percentage improvement (84.52%) in reading and math performance from 2002 to 2008."

(*Id.* ¶ 81).  "The School District reduced its 'Below Basic' group of students on the PSSA

from 68.1% in 1999 to 49.2% in 2008 while increasing its 'Proficient'/'Advanced' group

from 11.1% to 28.7%."  (*Id.* ¶ 82).  "For the school year 2007-2008, the PSSA data

demonstrates that the School District met the state empowerment goal of having less

than 50% of students tested scoring 'Below Basic' on the PSSA [49.2%]."  (*Id.* ¶ 83).  "For

the school year 2008-2009 – for the second consecutive year -- the School District

satisfied the state empowerment criteria with a score of 45.7% of students scoring 'Below

Basic.'"  (*Id.* ¶ 84).  "Finally, for the school year 2009-2010, the School District further

reduced the percentage of its students scoring Below Basic to 39.6%."  (*Id.* ¶ 85).

This rate of success, having less than 50% of students scoring "below basic" on the PSSA for three consecutive years, meant that the plaintiffs not only met the goals of the Improvement Plan but also the criteria set forth in the EEA.  (*Id.* ¶ 88).  In addition, for the years 2001 through 2009, the percentage of students graduating rose 171% and college acceptances rose 419%.  (*Id.* ¶¶ 89-90).

"At all times material and relevant hereto, plaintiffs each maintained at least satisfactory performance ratings. In fact, in each of plaintiffs' most recent performance reviews, they received a performance review of 'Excellent.'" (*Id.* ¶ 76).  Kohn's review was completed by the Board of Control in December 2009.  He was rated as "near Excellent."  (Am. Compl., Ex. D).

In November 2009, Linda Thompson was elected as the new mayor of Harrisburg, and she took office in January 2010.  (*Id.* ¶¶ 91-92).  She appointed five new members to the Board of Control.[2]  On March 15, 2010, the Board of Control held a public meeting.  At the meeting, the newly appointed members voted to "rescind" plaintiff Kohn's and Botel's employment agreements, effective immediately, doing so "arbitrarily," and some sixteen months before their employment agreements were to expire.  (*Id.* ¶¶ 93-94).  The other two members, Roy Christ and Esther Edwards, voted against rescission.  (Doc. 35-3, CM/ECF p. 45, Board minutes for March 15, 2010).[3]

_____

[2]  As noted above, the mayor controlled five of the members on the seven-member Board of Control, with the other two members coming from the Elected School Board.

[3]  The page number refers to the page number assigned by the Case Management/Electronic Case Files (CM/ECF) system.

On May 17, 2010, the Board of Control held another public meeting.  At that meeting, the Board voted to "rescind" Hostetler's employment agreement, with some six months two weeks remaining on it.  (*Id.* ¶¶ 96, 98).  "Hostetler was told that her Employment Agreement was rescinded because she was 'too close to Doctor Kohn.'" (*Id.* ¶ 97).  Roy Christ voted against rescission of Hostetler's agreement, and Esther Edwards was not present for the vote.  (Doc. 35-4, CM/ECF pp. 40-41, Board minutes for May 17, 2010).

Plaintiffs aver that "[n]either the School District nor Board of Control provided plaintiffs with written charges as to why their contracts were being 'rescinded,' nor were the plaintiffs given a fair and impartial hearing," as allegedly required by the employment agreements, the Public School Code, 24 Pa. Stat. Ann. § 10-1080 (West 1992), and the Local Agency Law.  2 Pa. Con. Stat. Ann. §§ 551-555 (West 2008).  (*Id.* ¶ 100).  The "rescission" of plaintiffs' employment agreements "was not consistent with the Improvement Plan."  (*Id.* ¶ 102).  In fact, it caused "the loss of significant grant monies . . . ."  (*Id.* ¶ 104).  "With more than $22 million of grant applications in the pipeline for 2010-11 (a conservative estimate based on the previous administration's track record), the School District could have received at least $17 million.  Instead, the new administrators applied for only $7 million and received a mere $300,000."  (*Id.* ¶ 131).

The EEA expired on June 30, 2010, and control of the School District was returned to the Elected School Board.  (*Id.* ¶ 105).  "Despite repeated requests, the School District and the Elected School Board refuse to reinstate plaintiffs' employment

and refuse to provide plaintiffs with a hearing." (*Id.* ¶ 110).  Plaintiffs allege that the

"Elected School Board has in effect ratified the unlawful rescissions of the Board of

Control by failing to take action and failing to reinstate the plaintiffs." (*Id.* ¶ 111).

 "It is believed and averred that the Board of Control 'rescinded' plaintiffs'

Employment Agreements as part of the Mayor's plan and personal agenda to destroy

plaintiff Kohn's career and those of the people that supported him." (*Id.* ¶ 113).  The

Mayor "vowed she would get even with Kohn" after he agreed not to renew the contract

of Loveship, Inc, her non-profit corporation, a contract under which Loveship provided job

counseling services in the School District's alternative education program.  (*Id.* ¶¶ 114-

117).

 During her campaign for mayor, Mayor Thompson "publicly promised to fire

plaintiff Kohn as the School District Superintendent." (*Id.* ¶ 118).  "At the time the School

District and Board of Control 'rescinded' the plaintiffs' Employment Agreements, Mayor

Thompson continued her attack against plaintiff Kohn, falsely stating that Kohn failed to

perform his job and that keeping Kohn as Superintendent would be a crime against the

students of the Harrisburg School District." (*Id.* ¶ 119).  "In fact, in a news article reported

on www.abc27.com, the Mayor falsely stated: 'He [Kohn] committed a crime by failing to

educate our kids and now he's committing another crime by coming back and asking us

to pay him for failed performance . . . .'" (*Id.* ¶ 121).  "The Mayor made similar

defamatory remarks in various television interviews and other news articles." (*Id.* ¶ 122).

The Mayor's "false statements" have damaged Kohn's "standing and association in the

educational employment community . . . ."  (*Id.* ¶ 198).  As a result, Kohn allegedly has been foreclosed from pursuing "innumerable public school employment opportunities in the Commonwealth of Pennsylvania and elsewhere."  (*Id.* ¶ 199).

Plaintiffs collectively refer to the Board of Control and its members as "the Board of Control."  (*Id.* ¶ 14).  They collectively refer to the Elected School Board and its members as the "Elected School Board."  (*Id.* ¶ 23).  Plaintiffs allege that the School District acted through the Board of Control and the Elected School Board.  (*Id.* ¶ 26).  They then collectively refer to the School District, the Elected School Board and the Board of Control as the "School District Defendants," (*id.* ¶ 29), with the "School District Defendants" being principals and agents of each other.  (*Id.* ¶ 30).

The complaint contains eight causes of action.  One cause of action, Count VII, is a separate claim by Kohn against Mayor Thompson for allegedly violating his right to due process by publicly stigmatizing him in connection with his discharge.  This count seeks only damages, consisting in part of loss of salary and injury to reputation.

The remaining seven causes of action are brought by all three plaintiffs against the "School District Defendants," meaning all the defendants, as defined in the complaint.  Count I is a state-law claim for mandamus.  Count II seeks a declaratory judgment, alleging that the terminations violated federal and state law.  Count III is a federal civil-rights claim, asserting that the terminations violated Plaintiffs' federal right to due process because they received no notice or a hearing before the terminations.  Count IV seeks a declaratory judgment, asserting that the statutory authority used to

terminate Plaintiffs violates federal and state constitutional law guaranteeing due process and prohibiting the impairment of contracts.  Count V is a state-law claim for breach of contract, asserting that the terminations violated Plaintiffs' contractual rights to termination only for good cause and to notice and a hearing before being terminated. Count VI is a state-law claim for promissary estoppel, based mainly on promises that termination would only be for good cause and only after notice and a hearing.  Count VIII is a state-law claim for violation of the Public School Code and the Local Agency Law for termination without notice or a hearing.

Counts I and II seek the same relief: a declaration that the terminations of Plaintiffs' contracts were void and of no force or effect; an order removing the current administrators and reinstating Plaintiffs' employment; and compensatory damages, consisting in part of loss of salary.  Counts III, V, VI and VIII seek only damages, consisting in part of loss of salary and injury to reputation.  Count IV seeks the same relief as Counts I and II and also a declaration that the pertinent statutory section violates the federal and state constitutions.

IV.   *Discussion*

A.   *Plaintiff Kohn Fails to State a Due Process  Claim Against Mayor Thompson Because Her Remarks Did Not Stigmatize Him in Connection With His  Discharge*

We deal first with plaintiff Kohn's separate claim against Mayor Thompson. In Count VII, Kohn brings a federal due-process claim against the Mayor, alleging that

12

she defamed him in connection with his discharge and that her defamatory remarks foreclosed other employment opportunities for him in the public schools. Specifically, he alleges that at the time the School District and Board of Control rescinded the plaintiffs' employment agreements, Mayor Thompson falsely stated that Kohn failed to perform his job and that keeping Kohn as superintendent would be a crime against the students of the Harrisburg School District. The Mayor also allegedly falsely stated to a television station: "He [Kohn] committed a crime by failing to educate our kids and now he's committing another crime by coming back and asking us to pay him for failed performance . . . ." (Am. Compl. ¶ 121). She made similar defamatory remarks to the news media.[4]

"[R]eputation *alone* is not an interest protected by the due process clause" of the Fourteenth Amendment. *Hill v. Borough of Kutztown*, 455 F.3d 225, 236 (3d Cir. 2006)(quoted case and internal quotation marks omitted). Instead, the Due Process Clause . . . protects a liberty interest in reputation only when the plaintiff shows a "stigma" to reputation "*plus* deprivation of some additional right or interest." *Id.* Under this "stigma-plus" test, when a public employer "'creates and disseminates a false and defamatory impression about the employee in connection with his termination,'" due process applies and the employee is entitled to a "name-clearing hearing." *Id.* (quoted case omitted). The

---

[4]   In paragraph 122 of the amended complaint, Kohn references several media websites with stories setting forth additional defamatory statements. We do not consider these statements because on a motion to dismiss, we consider only the allegations of the complaint, not evidence that might exist elsewhere. Additionally, in any event, the stories are no longer on the web.

"stigma" is the "creation and dissemination of a false and defamatory impression," and "the termination is the 'plus.'" *Id.*

The Mayor moves to dismiss, advancing several reasons why the claim lacks merit. We need only deal with one of them, that the Mayor's statements did not stigmatize Kohn because they only questioned his competency and job performance, which is insufficient to satisfy the stigma part of the stigma-plus test. We agree with this argument. *See Poteat v. Harrisburg Sch. Dist.*, 33 F. Supp. 2d 384, 393 (M.D. Pa. 1999)(Caldwell, J.)("Charges of incompetence do not implicate the liberty interest a public employee has in the manner of discharge")(cited cases omitted); *see also Mercer v. City of Cedar Rapids*, 308 F.3d 840, 845-46 (8th Cir. 2002); *Brown v. Montgomery County*, No. 08-4259, 2011 WL 1234856, at *3 (E.D. Pa. Mar. 31, 2011)(description of employee conduct as "malfeasance" was not stigmatizing)(citing *Mercer*).

In opposing the motion to dismiss, Kohn argues that Mayor Thompson accused him not just of poor job performance but also of having "committ[ed] crimes against Harrisburg school children . . . ." (Doc. 61, Pls.' Opp'n Br. at p. 49). He asserts the stigma consists of the false and defamatory statements that he failed to perform his job combined with the accusation that he committed crimes against the children. (*Id.*).

We disagree. Kohn's brief may assert that the Mayor accused him of committing crimes against Harrisburg's school children, but his complaint alleges something different, and it is the allegations of his complaint that are relevant on a motion to dismiss. As noted above, Mayor Thompson accused him of criminal conduct in

14

connection with his job performance, not with criminal conduct directly against children, and that he was committing another crime by seeking compensation for his discharge. This is a crucial distinction.  Based on the actual allegations, the Mayor was engaging in rhetorical hyperbole.  As rhetorical hyperbole, her statement was not stigmatizing even if she said Kohn's conduct was a crime.  *Cf. Beverly Enterprises, Inc. v. Trump*, 182 F.3d 183, 187-88 (3d Cir. 1999)(union leader's statement to an executive of the plaintiff company that "you people at Beverly are all criminals" was not defamatory under Pennsylvania law as merely being rhetorical hyperbole).  In other words, because of the context, no reasonable listener or reader would have believed that the Mayor was saying that Kohn had literally committed, or was committing, a crime.[5]

Kohn also relies on *Hill*, *supra*, and *Bartholomew v. Fischl*, 782 F.2d 1148 (3d Cir. 1986), to support his stigma-plus claim.  Those cases are distinguishable.  In both, a sufficiently stigmatizing statement was alleged.  In *Hill*, the defendant mayor said the plaintiff had made "'illegal' allocations of funds."  455 F.3d at 231, 236 n.16.  In *Bartholomew*, the defendant mayor had said the plaintiff had committed theft.  782 F.2d at 1150.  Unlike the Mayor's use of rhetorical hyperbole, these statements would be understood as accusing the plaintiffs in those cases of having committed real crimes.

---

[5]    The only other allegation in the amended complaint concerning the Mayor's reference to crimes is the allegation that she said keeping Kohn as superintendent would be a crime against the students of the Harrisburg School District.  This could not stigmatize Kohn as it is a reference to others, not Kohn, committing a crime.  It does indicate, however, that the Mayor's "it's a crime what he did" language is simply a rhetorical device.

Plaintiff Kohn's claim against Mayor Thompson will therefore be dismissed. Since this is the only claim in which the Mayor is named as a defendant, the Mayor will also be dismissed from this action.

B. *The Board of Control's Motion to Dismiss Under Fed. R. Civ. P. 12(b)(5)*

The Board of Control moves to dismiss based on lack of valid service upon it and the inability of Plaintiffs ever to effect valid service upon it. Defendant makes this assertion on the basis that the EEA expired by operation of law on June 30, 2010, citing 24 Pa. Stat. Ann. § 17-1716-B (West 2006). Based on the expiration of the EEA, Defendant argues that it ceased to exist on that date, and no longer has any powers as control of the School District was returned to the Elected School Board on that date. Hence any attempted service was invalid as it no longer existed at the time the complaint was filed, nor can service ever be effected on it.

In opposition, Plaintiffs point out that it did effect service on Defendant on January 3, 2011. (Doc. 61-2, Ex. B to Pls.' Opp'n Br.). They also argue that the Board should remain in existence for at least two years after its dissolution, the way a corporation must when it dissolves, citing 15 Pa. Con. Stat. Ann. § 1979 (West Supp. 2011), a part of Pennsylvania's corporation law.

We will deny the motion. Its sole basis is that the Board of Control ceased to exist on June 30, 2010, by virtue of section 17-1716-B. However, section 17-1716-B says nothing about the continued existence of the Board of Control; it simply provides that the EEA would expire on June 30, 2010. The Board of Control does not automatically cease

16

to exist simply because it no longer exercises authority over the School District.  The Board of Control cannot rely on the mere expiration of the act to prove that it no longer exists.[6]

    C.  *Plaintiffs Had a Contractual Right to Notice and a Hearing Before Being Terminated and Hence Have Stated A Valid Breach-of-Contract Claim*

As quoted above, Plaintiffs' contracts provided them with the following protection against termination.  First, the contracts set forth a substantive standard that had to be satisfied before Plaintiffs could be terminated, incorporated from the Public School Code of 1949, 24 Pa. Stat. Ann. § 10-1080 (West 1992), essentially allowing termination only for cause.[7]  Second, the agreements conferred procedural rights, incorporating section 10-1080's requirement of notice and hearing before termination and the procedural rights set forth in the Local Agency Law, 2 Pa. Con. Stat. Ann. § 551-555 (West 2008).

---

[6]  We note that in their brief in support of their Rule 12(b)(6) motion, the Board of Control and its members assert that Plaintiffs allege in paragraph 105 of the amended complaint that the Board "ceased to exist on June 30, 2010."  (Doc. 62, CM/ECF p. 9).  Paragraph 105 does not allege this; instead it alleges that "[p]ursuant to the EEA, on June 30, 2010 the Board of Control's term expired and control of the School District was returned to the Elected School Board."

[7]  Section 10-1080 provides as follows:

> District superintendents and assistant district superintendents may be removed from office, after hearing, by a majority vote of the board of school directors of the district, for neglect of duty, incompetency, intemperance, or immorality, of which hearing notice of at least one week has been sent by mail to the accused, as well as to each member of the board of school directors.

None of these requirements were met before Plaintiffs were terminated, leading to Plaintiffs' breach-of-contact claim.  In moving to dismiss this claim, Defendants argue that section 17-1704-B(a)(8) of the EEA overrode the contractual language and allowed the termination of Plaintiffs without notice and hearing and without cause, essentially making them at-will employees of the District.  In pertinent part, section 17-1704-B(a)(8), provides as follows:

> (a) The board of school directors shall implement the school district improvement plan.  Notwithstanding any other provision of law to the contrary, the board of school directors . . . may do any of the following consistent with the school district improvement plan:
>
> . . . .
>
>  (8) Rescind without penalty the contract of the superintendent and other administrative personnel entered into after the effective date of this article.

24 Pa. Stat. Ann. § 17-1704-B(a)(8).[8]

Defendants focus on the right of the board of school directors (here the Board of Control by virtue of the School District's certification as an "education empowerment district") to "[r]escind without penalty" the employment agreements of a superintendent and "other administrative personnel."[9]  Defendants argue that this language conferred on the

---

[8]    Section 17-1704-B(a)(8)'s reference to "this article" is to the EEA, effective July 1, 2000, which became Article XVII-B of the School Code.

[9]    Plaintiffs do not contest that this includes not only Kohn but also his deputy superintendent and assistant superintendent.

appropriate officials the right to terminate Plaintiffs' employment agreements at any time for any reason for contracts entered into after the effective date of the act.

Defendants recognize that the contractual language is to the contrary, that it prohibits terminating Plaintiffs except for cause and only after notice and a hearing, incorporating rights under section 10-1080 and the Local Agency Law, but maintain that the contractual language must give way to section 17-1704-B(a)(8) for two reasons.  First, a contract incorporates the law in existence at the time it was made so Plaintiffs' employment agreements incorporated section 17-1704-B(a)(8).  Second, a contract cannot conflict with a statute enacted for a public purpose or to protect the public, and the EEA was enacted for the public's benefit, to improve the quality of education in certain failing school districts.  Section 17-1704-B(a)(8) serves this purpose by giving school boards the flexibility to terminate superintendents and other high-level administrators to ensure that the improvement plan is being implemented.

We agree that a contract incorporates the law in existence at the time it was made, *see Petty v. Hosp. Serv. Ass'n of Northeastern Pennsylvania*, __ Pa. __, __, 23 A.3d 1004, 1012 (2011), but we do not believe this principle applies here when the contracts are not silent on the relevant issue.  Instead, we look to the second principle Defendants assert, that a contractual provision contrary to public policy will not be enforced.  *See Nationwide Mut. Ins. Co. v. Riley*, 352 F.3d 804, 807 (3d Cir. 2003).  A provision contrary to a statutory enactment is contrary to public policy.  *Id.*

Under this principle of contract interpretation, we agree with Defendants that the contested provision of the employment agreements violates public policy, but we do so only in part, and only in regard to the substantive standard for rescinding the contract. Section 17-1704-B(a)(8) allows a school board to rescind a contract with a superintendent or other administrative personnel when it is "consistent with the school district improvement plan."  But the contractual provision at issue allows termination only for cause.  We can perceive situations where a superintendent or other administrative personnel are not incompetent and whose conduct does not satisfy the other three grounds in section 10-1080 for discharge, *see* note 7 above, but the operation of the School District is not in accord with the improvement plan.  Enforcement of the contractual just-cause requirement in those circumstances would conflict with the purpose of the EEA to improve the academic achievement of students in failing districts.

On the other hand, in respect to the procedural rights conferred on Plaintiffs by the agreements, we see no conflict with the EEA.  Defendants say there is a conflict because section 17-1704-B(a)(8) permits rescission "[n]otwithstanding any other provision of law to the contrary."  We fail to see any conflict based on this language.  It is certainly true, as Defendants assert, that section 17-1704-B(a)(8) was intended as a way of rescinding the contracts of employees covered under the section, but that does not establish that procedural rights mentioned in section 10-1080, rights the School District contractually agreed Plaintiffs could invoke, conflict with section 17-1704-B(a)(8).  Indeed,

section 17-1704-B(a)(8) is silent as to any procedural rights a covered employee is entitled to, one way or the other.

Defendants argue that this statutory silence indicates that section 17-1704-B(a)(8) was meant to prohibit terminated personnel from invoking procedural rights, no matter the source, either statutory (section 10-1080) or contractual (Plaintiffs' employment agreements). Defendants point out that section 17-1704-B(a)(8) confers the right to rescind the contract and unlike section 10-1080, does not mention procedural rights, or condition the right of rescission in any way.

In making this argument, Defendants believe it is significant that section 17-1704-B(a)(8) refers to a right to "rescind" a contract while section 10-1080 refers to the right to "remove[ ]" a school official. Citing Merriam-Webster, Defendants believe "rescind" means to "abrogate," to "restore the parties to the positions they would have occupied had there been no contract; to make void . . . ." (Doc. 58, Board of Control's Supp'n Br. at p. 23). Defendants believe this is a meaningful distinction. We disagree. Our own view is that there is no reason to believe that the Pennsylvania General Assembly meant anything more by "rescind" than "cancel," another definition of the word "rescind." Webster's Third New International Dictionary 1930 (1981).

We disagree with Defendants that section 17-1704-B(a)(8)'s silence as to procedural rights means that Plaintiffs could not provide for such rights contractually. This

brings us to arguments Defendants have made by relying on comparisons to two other statutory sections of the EEA, 24 Pa. Stat. Ann. § 17-1704-B(c)(4) and § 17-1704.1-B.[10]

Both of these sections affirmatively refer to procedural rights for the affected employee, in the one case providing for them and in the other excluding them.  In pertinent part, section 17-1704-B(c)(4) authorizes a school board to dismiss a "school administrator" for unsatisfactory performance "provided" that it gives the administrator "notice and an opportunity to be heard" under the Local Agency Law.  A "school administrator" is defined to include a "first level supervisor" but to exclude superintendents and assistant superintendents.  § 17-1704-B(c)(5)(citing 24 Pa. Stat. Ann. § 11-1164 (West 1992)).  Section 17-1704.1-B authorized the school board to dismiss a "management employe" for unsatisfactory performance but that dismissal would not be an adjudication requiring notice and a hearing.  § 17-1704.1-B(c).  A "management employe" was generally defined as "an employe [holding] a management position above the level of first level supervisor."  § 17-1704.1-B(d)(i).

In comparing sections 17-1704-B(c)(4) and 17-1704.1-B with section 17-1704-B(a)(8), Defendants conclude that the latter section was not intended to confer procedural rights on superintendents and administrative personnel for two reasons.  First, when the General Assembly wanted to confer due process rights, it said so specifically, as when it did in section 17-1704-B(c)(4), so the silence of section 17-1704-B(a)(8) on due-

---

[10]   Section 17-1704.1-B was enacted on July 20, 2007, and by its own terms in subsection (e) expired on December 31, 2009.

process rights means that none were intended to be conferred on superintendents and administrative personnel.  Second, the EEA intended to provide "less due process" for those "highest in the chain of command," (Doc. 58, Board of Control Supp'n Br. at p. 35), because management employees were entitled to due process but school administrators were not.  It follows that superintendents and other administrative personnel at the highest level are not statutorily entitled to due process.[11]

We disagree with Defendants' position.  Comparison of these statutory provisions to section 17-1704-B(a)(8) leads to no definite answer as to the latter's preclusion of due process rights.  The only inference that can be drawn is that sometimes the General Assembly specifically addressed due process rights, sometimes authorizing them and sometimes denying them.  In the case of section 17-1704-B(a)(8), however, the General Assembly did neither and was silent on the issue.  We must adhere to the statutory text, *Am. Rock Mechanics, Inc. v. N. Abbonizio Contractors, Inc.*, 887 A.2d 322, 325 (Pa. Super. 2005), so we will not infer from the silence of section 17-1704-B(a)(8) on procedural rights that the section intended to deny them.

Defendants next argue that there is no breach of contract because section 17-1704-B(a)(8) permits rescission of the employment agreements "without penalty." Defendants argue that this means they could terminate the contracts without being subject

---

[11]  As Plaintiffs point out, we recognize the irony of Defendants' reliance on the exclusion of due-process rights in section 17-1704.1-B when that exclusion was found to violate due process in *Mosley v. City of Pittsburgh Public Sch. Dist.*, 702 F. Supp. 2d 561, 581 (W.D. Pa. 2010).  But we are dealing here with Defendants' argument concerning the construction of the statute, as opposed to its constitutionality, so we address it at that level.

to any legal action or liability of any kind.  Conversely, Plaintiffs argue that "without penalty" means that Defendants could be sued, but only for compensatory damages flowing from the breach of contract, not for damages imposed as a form of punishment over and above compensatory damages.

"'Penalty'" has many different shades of meaning; it is among the most elastic terms known to the law." *Levy Motor Vehicle Operator's License Case*, 194 Pa. Super. 390, 391, 169 A.2d 596, 597 (1961).  We have reviewed the cases cited by the parties in support of their different positions.  We agree with Plaintiffs that "penalty" in most cases, whether in the civil or criminal context, refers to a punishment of some kind independent of any compensatory relief a party may owe. *See City of Philadelphia v. Nam (In re Nam)*, 273 F.3d 281, 287 (3d Cir. 2001)("'penalty' is an "'elastic term with many different shades of meaning'" but is nevertheless "'generally confined to pecuniary punishment'")(quoting Black's Law Dictionary 650, 1133 (6th ed. 1990)).  We are nonetheless convinced that in the context of the EEA, a school board's right to rescind in section 17-1704-B(a)(8) "without penalty" is not a reference to some form of monetary punishment, civil or otherwise.  Instead, it means that, as long as rescission is consistent with the improvement plan, a school board may terminate a contract without regard to contractual obligations to the contrary, such as a provision setting the length of the contract, or one establishing a buy-out if it terminates early.  Still, our interpretation comes down in Plaintiffs' favor as it allows them to recover compensatory damages, if they show

that their termination was not consistent with the Improvement Plan, and rejects

Defendants' position that it bars any recovery.

Defendants next argue that Plaintiffs cannot maintain a breach-of-contract

claim because the Board of Control that executed the employment agreements (the one

containing Mayor Reed's choices) could not bind the successor Board (the one containing

Mayor Thompson's choices) to agreements imposing procedures from the Local Agency

Law and section 10-1080 of the School Code.  In support, they cite *Lobolito, Inc. v. N.*

*Pocono Sch. Dist.*, 562 Pa. 380, 388, 755 A.2d 1287, 1291 (2000), and *Falls Twp. v.*

*McManamon*, 113 Pa. Commw. 504, 508-09, 537 A.2d 946, 947 (1988).  We reject the

argument.  These cases are distinguishable.  They both ruled that a municipal body could

not bind its successor on contracts involving governmental functions.  Neither case dealt

with the School Code, the EEA, or the employment contracts of school superintendents

and other school district officials.  They cannot control the outcome here.

Finally, we deal with Defendants' argument that their interpretation of section

17-1704-B(a)(8) is consistent with what they describe as the legislative goal of the EEA.

The Pennsylvania General Assembly gave the Board of Control broad power "to reform

school districts that were underperforming educationally or financially, or in both respects."

(Doc. 58, Board of Control's Supp'n Br. at p. 24).  "[T]he Board of Control was given the

flexibility to change the educational direction of the School District in order to implement

the School District's empowerment plan."  (*Id.*).  According to Defendants, it follows that

"the Board of Control was authorized to void the contracts of superintendents and other

administrators without due process."  The contracts "could simply be rescinded," (id.), and "[a]s a result of Section 17-1704-B(a)(8), Plaintiffs were, effectively, 'at will' employees who served at the discretion of the Board of Control."  (*Id.*).

The problem with Defendants' interpretation of section 17-1704-B(a)(8) is that no statutory language supports it.  There is no mention in the section of the school board's right to terminate a contract without due process or that it could treat administrative personnel as at-will employees so that they could be fired for no reason at all.  In fact, the statutory language in one crucial respect contradicts their interpretation: section 17-1704-B(a)(8) permits rescission of the contract as long as it is "consistent with the school district improvement plan."  § 17-1704-B(a)(8).

Moreover, it could be argued that it is Defendants' interpretation that is at odds with the legislative goals of the EEA.  Interpreting section 17-1704-B(a)(8) to allow a school board to dismiss a superintendent for no reason at all could interfere with the EEA's goal of rehabilitating failing school districts.  Here, for example, it is alleged that plaintiff Kohn was meeting the goals of the EEA but that Mayor Thompson, once she gained control of a majority of the Board of Control, terminated him for purely personal reasons having to do with the cancellation of the School District's contract with her corporate non-profit, Loveship, Inc.  Consequently as Plaintiffs allege, the School District lost "significant grant monies."  (Am. Compl. ¶ 104).  "[T]he School District could have received at least $17 million," but "the new administrators applied for only $7 million and received a mere $300,000."  (*Id.* ¶ 131).  Conversely, allowing a board to rescind a

superintendent's employment agreement only when consistent with the improvement plan, as section 17-1704-B(a)(8) does indeed require, minimizes the risk of such a result.

We conclude that Plaintiffs may proceed with their breach-of-contract claim based on a violation of procedural rights  under section 10-1080 of the School Code and the Local Agency Law, rights incorporated into the contract.  Plaintiffs may not proceed on any substantive standard in the contract allowing termination only for cause as that would conflict with the right under section 17-1704-B(a)(8) to discharge if consistent with the improvement plan.

Since we are allowing the breach-of-contract claim to proceed, we must decide who should be a defendant on the claim.  As noted, Plaintiffs have named the "School District Defendants" on this claim, defined by Plaintiffs collectively as the School District, the Elected School Board and the Board of Control.  Since Plaintiffs have also defined the Elected School Board and the Board of Control as both the Boards and their members, Plaintiffs have sued all the defendants on this claim.[12]

We conclude that the School District should be the only defendant on the breach-of-contract claim.  The School District is the only defendant named as a party to the agreements, *Electron Energy Corp. v. Short*, 408 Pa. Super. 563, 567, 597 A.2d 175, 177 (1991)(only parties to a contract can be liable for its breach), albeit the Board of Control executed them on the School District's behalf, as part of its authority under the

_____

[12]  As Plaintiffs state: "The School District, Board of Control, Elected Board and the individual members are referred to collectively as the 'School District Defendants.'" (Doc. 61, Pls.' Opp'n Br. at p. 1 n.1).

EEA to run the District.  *See* 24 Pa. Stat. Ann. § 17-1706-B(a).  The Board of Control is also not recognized as a "political subdivision" capable of being sued in its own name, and any relief Plaintiffs seek for breach of contract can be obtained by suing the District alone. *See Young v. Pleasant Valley Sch. Dist.*, No. 07-854, 2008 WL 417739, at *10 (M.D. Pa. Feb. 13, 2008)(citing *Glickstein v. Nashaminy Sch. Dist.*, No. 96-6236, 1997 WL 660636 (E.D. Pa. Oct. 22, 1997)).  *See also E.B. v. Woodland Hills Sch. Dist.*, No. 10-442, 2010 WL 2817201, at *4 (W.D. Pa. July 16, 2010)(dismissing Board of School Directors because the School District would be liable in any event for any judgment against the Board).

> D. *Plaintiffs Had a Property Interest in Their Jobs and Have Stated Federal Due Process Claims for Being Fired Without Notice and Opportunity to Be Heard*

In Count III of the amended complaint, Plaintiffs make a claim that their terminations violated the Due Process Clause of the Fourteenth Amendment, U.S. Const. Amend. XIV, because they received no notice or a hearing before they were fired. Defendants move to dismiss this count by arguing that Plaintiffs had no property right in their jobs and without such a right, were owed no due process in connection with their terminations.

To state a claim for deprivation of procedural due process, a plaintiff must allege that "(1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of life, liberty, or property, and (2) the procedures available to him did not provide due process of law." *Iles v. deJongh*, 638 F.3d 169, 173

(3d Cir. 2011)(internal quotation marks and quoted cases omitted).  A person can have a property interest in a government job if he has a legitimate entitlement to it, not just a unilateral expectation of continued employment.  *Biliski v. Red Clay Consol. Sch. Dist. Bd. of Educ.*, 574 F.3d 214, 219 (3d Cir. 2009).  State law determines if a property right exists.  *Iles*, 638 F.3d at 173.  Federal law determines what process is due.  *McDaniels v. Flick*, 59 F.3d 446, 458 (3d Cir. 1995).

Defendants assert that Plaintiffs had no property right in their jobs because section 17-1704-B(a)(8) authorized their dismissals with or without cause, thereby making them at-will employees, and thus entitling them to no due process protection.  In support, they rely on the statutory-construction argument they made above comparing two other statutory sections of the EEA, 24 Pa. Stat. Ann. § 17-1704-B(c)(4) and § 17-1704.1-B, to section 17-1704-B(a)(8), and whether section 17-1704-B(a)(8) was intended to preclude procedural rights.  We have already rejected this argument.

Plaintiffs contend that they have a property right in continued employment based on three grounds.  First, they rely on their employment contracts.  Those contracts specifically state that in any "job action," they would be entitled to the procedural rights conferred by section 10-1080 of the School Code and the Local Agency Law, and that any termination would only be for "cause," as they put it, based on the substantive standard imported into the contracts from section 10-1080.  Second, they rely on these statutory provisions themselves as creating the property right.  Third, they rely on the language of

section 17-1704-B(a)(8), which allows rescission of their employment contracts by the

Board of Control if "consistent with the school district improvement plan."

We agree with Plaintiffs that they have a property right in their employment,

but only arising from the language of section 17-1704-B(a)(8).[13]  At first glance, section

17-1704-B(a)(8) does not appear to create a legitimate entitlement of Plaintiffs to their

jobs because it contains no language indicating an intent to benefit them by conditioning a

discharge on whether it is consistent with the Improvement Plan.  Instead, the statutory

section seems to serve a public purpose, the goals of the EEA, by allowing termination of

Plaintiffs' employment if consistent with the Improvement Plan.  *See Town of Castle Rock

v. Gonzales*, 545 U.S. 748, 764-65, 125 S.Ct. 2796, 2808, 162 L.Ed.2d 658 (2005)(finding

no property right to enforcement of a restraining order and noting that the criminal laws

serve public ends so that even if a statute mandated enforcement of the order it could not

be said that the order was intended to confer a benefit on the plaintiff, thereby creating a

property right).

Nonetheless, as Plaintiffs argue, in light of *Fatscher v. Board of School

Directors*, 28 Pa. Commw. 170, 367 A.2d 1130 (1977), *Kodish v. Spring-Ford Area Sch.

Dist.*, 29 Pa. Commw. 643, 373 A.2d 124 (1977), and *Carmody v. Board of Directors of

the Riverside Sch. Dist.,* 499 Pa. 466, 453 A.2d 965 (1982), section 17-1704-B(a)(8) does

---

[13]     As just noted, procedural rights in themselves do not create a property right, and
we have decided that the contractual right to section 10-1080's substantive just-cause
standard conflicts with the EEA.  Although a plaintiff can rely on a contract prohibiting
termination except for cause to create a property right, *see Dee v. Borough of Dunmore,* 549
F.3d 225, 231 (3d Cir. 2008), that principle does not apply here for the reason just stated.

create a property interest.  The lead case is *Fatscher*.  There, the defendant school board

without notice or hearing suspended a teacher under authority granted by 24 Pa. Stat.

Ann. § 11-1124 (West 1992).  Section 11-1124 allows teacher  suspensions when there is

a substantial decrease in pupil enrollment.  Section 11-1124, like section 17-1704-B(a)(8),

contains no language directly protecting an employee from suspension.[14]  The trial court

granted the teacher's complaint in mandamus for a hearing before the board in accord

with the Local Agency Law.  On appeal, the board argued in part that the teacher was not

entitled to a hearing because section 1124 "is only a delegation of authority to school

boards and not a grant of rights to employes."  *Id.* at 173, 367 A.2d at 1131.  Rejecting this

position, the commonwealth court said that section 1124 "by enumerating four reasons for

the suspension of professional employes, *does*, in effect, grant the employes the right to

be suspended for those reasons *only*."  *Id.* at 173-74, 367 A.2d at 1132.  *Fatscher* was

followed in *Kodish*, where a teacher was suspended because of a curtailment of an

educational program.  *Fatscher* was cited with approval by the Pennsylvania Supreme

Court in *Carmody* where the court stated that the appellant teachers were entitled to

hearings under the Local Agency Law when they were suspended because of a decrease

---

[14]    Section 11-1124 allows a school board to suspend a professional employee for
four reasons.  In pertinent part, it provides as follows:

> Any board of school directors may suspend the necessary number of
> professional employes, for any of the causes hereinafter enumerated:

> (1) Substantial decrease in pupil enrollment in the school district;

> (2) Curtailment or alteration of the educational program . . . .

in pupil enrollment.  499 Pa. at 468 n.1, 453 A.2d at 966 n.1.  Based on these cases, we conclude that section 17-1704-B(a)(8) likewise grants Plaintiffs the right not to be terminated unless consistent with the Improvement Plan, thereby creating a property right in their jobs under state law.

Defendants Board of Control and its individual members attempt to distinguish *Fatscher* and *Kodish* by arguing that those cases did not establish any right to a pre-suspension hearing.  These defendants also cite *Sto-Rox Sch. Dist. v. Horgan*, 68 Pa. Commw. 416, 449 A.2d 796 (1982), for the proposition that no hearing was required before Plaintiffs were terminated.  Defendants misapprehend the significance of *Fatscher* and *Kodish* to the instant case.  Those cases establish Plaintiffs' property right in their jobs; they have no bearing on the process Plaintiffs were entitled to, which is a matter of federal law, as noted above.  *Sto-Rox* is distinguishable because it addressed statutory due process under the Local Agency Law, which again has no bearing on what federal law requires as to process for Plaintiffs.

Defendants Board of Control and its individual members also argue, for the first time in their reply brief, that even if Plaintiffs had a property right in their jobs entitling them to due process, they received all the process that was due because they had an opportunity for a post-termination hearing, but they do not allege they requested one from the Board of Control, as opposed to their later requests for a hearing from the School District and Elected School Board.

We reject this argument because the scope of the process that must be provided is determined by federal law, not state law, and these defendants have made no argument that a post-termination hearing satisfies federal due process in these circumstances.  Generally, federal due process requires a pre-deprivation hearing before a person is deprived of a property right.  *Schmidt v. Creedon*, 639 F.3d 587, 595-96 (3d Cir. 2011).

The federal due-process claim will therefore proceed, and we must decide who are proper defendants on this claim.  We have already decided that the School District should be the only defendant when the Board of Control and the Elected School Board have been named, *see Young*, *supra*, 2008 WL 417739, at *10 (M.D. Pa.), so the latter two defendants will be dismissed from this claim while the School District remains.

As to the individual members of the Elected Board, they argue they cannot be liable on this claim because it is based on the conduct of the Board of Control and its members in rescinding Plaintiffs' contracts, not anything the members of the Elected Board did.  As further support, they argue that during the relevant time the Board of Control was in control of the school District, pointing to 24 Pa. Stat. Ann. § 17-1706-B(a), which confers on a board of control the powers and duties given to a board of school directors, except for levying taxes.  In opposition, Plaintiffs contend that the Elected Board members are liable based on their conduct in refusing to undo the rescission of their

employment agreements and in failing to provide the hearing they requested on their terminations.[15]

We disagree with the Elected School Board members that the federal civil-rights claim must be dismissed as against them. "To be liable under § 1983, a defendant must have some personal involvement in the underlying unconstitutional conduct." *Ruff v. Health Care Administrator*, 2011 WL 3607449, at *2 (3d Cir. 2011)(per curiam) (nonprecedential)(citing *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988)). *See also Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005). At first glance, it appears that these defendants do not because Plaintiffs allege it was the Board of Control and its members who terminated Plaintiffs' contracts at a time when the Elected Board had no legal authority to run the School District. However, we believe the Elected School Board members have the requisite personal involvement in the circumstances of this case by virtue of having been restored to their authority to run the District, and hence having the authority to return Plaintiffs to their positions or otherwise cure the alleged due process violation by granting them hearings on their discharges. The situation is not an ongoing violation, *see Atkinson v. Taylor*, 316 F.3d 257, 270 (3d Cir. 2003); *Pugh v. Goord*, 571 F. Supp. 2d 477, 513-14 (S.D.N.Y. 2008), or a failure to act contemporaneously to prevent another's unconstitutional conduct, *see Smith v. Mensinger*, 293 F.3d 641, 650 (3d Cir. 2002), but close enough to these situations to conclude there was sufficient personal

---

[15] In their opposition brief to the motions to dismiss, Plaintiffs also contend that the Elected Board members "voted not to renew Plaintiffs' agreements," (doc. 61 CM/ECF p. 32), but we can find no such allegation in the amended complaint.

involvement when the Elected School Board members failed to act when presented with

the opportunity to fix the alleged constitutional violations.[16]

           The individual defendants, the members of the Board of Control and of the

Elected School Board, maintain they cannot be named as defendants on the basis of

several immunities from suit.[17]   They first rely on "high public official immunity" under state

law.  *See Lindner v. Mollan*, 544 Pa. 487, 677 A.2d 1194 (1996).  Reliance on state law for

immunity against Count III, a federal civil-rights claim under 42 U.S.C. § 1983, fails

because "the doctrine of high official immunity under Pennsylvania law does not shield [a

defendant] from suit under § 1983.  That doctrine shields high officials from state law

claims, not [federal] constitutional claims."  *Hill v. Borough of Kutztown*, 455 F.3d 225,

243-44 (3d Cir. 2006).  More broadly, even if Pennsylvania had attempted to immunize its

officials from liability under federal law, it had no authority to do so.  *Bates v. Paul Kimball*

---

[16]    However, we agree with the Elected School Board members that they cannot be liable on this claim based on the termination of the agreements, as the members of the Board of Control engaged in that conduct.  Additionally, defendants Christ and Edwards also have no liability based on the termination of the agreements since the Board minutes indicate that Christ voted against all three terminations and Edwards voted against the termination of Kohn and Botel and was not present for the vote on Hostetler.

          Parenthetically, we disagree with Christ and Edwards when they say we can rely on the Board minutes on a motion to dismiss.  *See Perano v. Twp. of Tilden*, No. 09-754, 2010 WL 1462367, at *1 n.1 (E.D. Pa. April 12, 2010)(court will take judicial notice of township minutes but cannot rely on them to "establish[ ] the truth of the underlying facts contained within them").  However, Plaintiffs have not challenged the defendants on this point, so neither will we.

[17]    The two Boards join in some of these arguments, but we have already decided that the Boards need not be defendants, so we address these arguments only in regard to the individual defendants.

*Hosp.*, 346 F. App'x 883, 885 (3d Cir. 2009)(per curiam)(nonprecedential)(citing *Howlett v. Rose,* 496 U.S. 356, 110 S.Ct. 2430, 110 L.Ed.2d 332 (1990)).

        The Elected School Board members also argue they are entitled to absolute, quasi-judicial immunity.  They rely on the non-exhaustive six-factor list mentioned in *Cleavinger v. Saxner*, 474 U.S. 193, 202, 106 S.Ct. 496, 501, 88 L.Ed.2d 507 (1985).  We disagree.  We need not examine the factors because the Supreme Court has already held that school board members are entitled only to qualified immunity.  *See Wood v. Strickland*, 420 U.S. 308, 321-22,95 S.Ct. 992, 1000-1001, 43 L.Ed.2d 214 (1975) (rejecting claim of absolute, quasi-judicial immunity and ruling that school board members who voted to expel students for the remainder of the semester were entitled only to qualified immunity), *overruled on other grounds*, *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).  The Court's ruling was "in the specific context of school discipline," *id.* at 322, 95 S.Ct. at 1001, but was extended by the Third Circuit to proceedings involving the discharge of a college professor by members of a college board of trustees, *Skehan v. Board of Trustees of Bloomsburg State College*, 538 F.3d 53, 60 (3d Cir. 1976(en banc)("Functionally, the school board members adjudicating a student discharge and the state college officials adjudicating a faculty termination are identically situated.").  *See also Harris v. Victoria Independent Sch. Dist.*, 168 F.3d 216, 224-25 (5th Cir. 1999)(members of a school district's board of trustees were not entitled to absolute, quasi-judicial immunity for affirming in a grievance hearing the plaintiff teachers' transfers); *Stewart v. Baldwin County Bd. of Educ.*, 908 F.2d 1499, 1507-08 (11th Cir. 1990)(school

36

board members were not entitled to absolute, quasi-judicial immunity for discharge of board employee, noting that the Supreme Court in *Wood* "explicitly declined to extend absolute judicial immunity protection to actions taken by school board members").

The Elected School Board members also argue that they are entitled to qualified immunity. The doctrine of qualified immunity protects government officials from liability on federal civil-rights claims insofar as their conduct does not violate clearly established constitutional rights of which a reasonable person would have known. *Ray v. Twp. of Warren,* 626 F.3d 170, 173 (3d Cir. 2010)(quoting *Pearson v. Callahan,* 555 U.S. 223, 129 S.Ct. 808, 815, 172 L.Ed.2d 565 (2009)). Courts conduct a two-part analysis for a qualified immunity defense: whether the defendants' conduct violated a constitutional right, and if it did, whether that right was clearly established at the time. *Mierzwa v. United States,* 282 F. App'x 973, 978 (3d Cir. 2008)(per curiam)(nonprecedential) (citing *Yarris v. County of Del.,* 465 F.3d 129, 140–41 (3d Cir. 2006)). A constitutional right is "clearly established" when the "contours of the right [are] sufficiently clear that a reasonable officer would understand that what he is doing violates that right." *Womack v. Smith,* No. 06–CV–2348, 2009 WL 5214966, at *4 (M.D. Pa. Dec. 29, 2009)(quoting *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)).

On the first part of the analysis, the Elected School Board members first argue they did not violate Plaintiffs' constitutional rights because it was the Board of Control that terminated the employment agreements, not the Elected School Board and its members. We rejected this argument above because it does not address Plaintiffs'

37

allegations against them, that after June 30, 2010, when control of the School District was returned to the Elected School Board, the Elected School Board refused Plaintiffs' repeated requests to reinstate them or to provide them with a hearing.  On the second part of the analysis, the Elected School Board members summarily argue that "as is evidenced in the other arguments in this brief, even if we assume for argument purposes that the first prong is met, Plaintiffs have not shown that a clearly established right has been violated."  (Doc. 55, Elected Board's Br. at p. 11).  This argument is rejected as being conclusory and as not permitting meaningful evaluation of the qualified-immunity defense.

The individual defendants also argue that the claims against them cannot proceed because official capacity suits are really against the governmental entity that employs the individuals, so naming them is redundant to naming the School District.  The individual members of the Board of Control further argue that since the claims are based on their "official action[s]," (doc. 58, Board of Control Supp'n Br. at p. 10), naming them "appears to be nothing more than an attempt to punish them for the action which they took which was within their authority."  (*Id.*, p. 11).

It is true that official capacity suits against individual defendants are really against the employing governmental entity, *Bittner v. Snyder County*, 345 F. App'x 790, 792 (3d Cir. 2009)(nonprecedential), but Plaintiffs have not indicated in what capacity the individual defendants have been sued, either in their official capacities, or in their personal

capacities (sometimes also referred to as being sued in their individual capacities).[18]  The

individual defendants can certainly be sued in their personal capacities for actions they

undertook as part of their jobs on their respective Boards.  *Cf. Slinger v. New Jersey*, 366

F. App'x 357, 360 (3d Cir. 2010)(nonprecedential)("the Eleventh Amendment does not bar

suit against state officials in their individual capacities, even if the actions which are the

subject of the suit were part of their official duties").

       Further, individual defendants cannot avoid liability on a section 1983 claim

by asserting that their actions were taken as part of their official duties.  That is what a

federal civil-rights claim under 42 U.S.C. § 1983 is for, to expose a person to personal

liability for actions taken under color of state law, when those actions violate the federal

Constitution or federal law.  *See Hafer v. Melo*, 502 U.S. 21, 25, 112 S.Ct. 358, 363, 116

S.Ct. 301 (1991).  The claim can thus proceed against the individual defendants in their

personal (or individual) capacities.

E.  *Plaintiffs Have Stated a Valid State-Law Mandamus Action*

       Count I is an action in mandamus under state law.  In part, Plaintiffs seek

reinstatement to their positions on the ground that state law was not followed in the

termination of their employment agreements.  Defendants move to dismiss this claim.

       "A *mandamus* action lies only 'to compel official performance of a ministerial

act or mandatory duty where there is a clear legal right in the plaintiff, a corresponding

---

[18]  "In personal capacity suits, a plaintiff seeks to impose personal liability upon an individual officer and recover from the personal assets of that officer."  *Garden State Elec. Inspection Services Inc. v. Levin*, 144 F. App'x 247, 251 (3d Cir. 2005)(nonprecedential).

duty in the defendant, and a lack of any other adequate and appropriate remedy at law . . .'" *Crozier Chester Med. Ctr. v. Dep't of Labor & Indus.*, __ Pa. __, __, 22 A.3d 189, 193 (2011)(quoted case omitted).  Mandamus cannot be used "'to compel the performance of a particular discretionary act,'" but it can be used "'to direct that discretion be exercised.'" *Id.* (quoted case omitted).

 Defendants assert that Plaintiffs' mandamus claim meets none of the requirements of a mandamus action.  First, Plaintiffs have no clear right to relief as shown by their claim seeking declaratory relief, which is an attempt to establish that the Board of Control's termination of their contracts was illegal, as opposed to a clear showing that it was improper.  Second, Defendants have no corresponding duty as the termination was lawful under section 17-1704-B(a)(8).  The Elected Board and its members add that they could have had no duty when it was the Board of Control that terminated the agreements.  Finally, Plaintiffs have an adequate remedy at law, as shown by the other claims in the amended complaint.

 We conclude that the mandamus claim survives the arguments Defendants have made against it, based on *Burns v. Bd. of Directors of the Uniontown Area Sch. Dist.*, 748 A.2d 1263 (Pa. Commw. Ct. 2000), cited by Plaintiffs.  In *Burns*, the Pennsylvania Commonwealth Court ruled that mandamus could be invoked by a school superintendent for reinstatement to his position after a newly elected school board voted to rescind a contract duly entered into by the previous board.  The rescission was accomplished without complying with section 10-1080 of the School Code as to a pre-

termination hearing or a finding that any of the four grounds for discharge under section 10-1080 were satisfied. *See* note 7 above. The commonwealth court stated that the requirements of mandamus had been fulfilled because the superintendent had a clear legal right to perform his statutory duties and the school board had a clear duty to comply with the statutory sections of the School Code regarding his hiring and compensation. Further, because the relationship between a superintendent, a school board, and a school district was statutory, and there was no statutory remedy for a board's refusal to comply with section 1080, there was no adequate remedy at law to cure the statutory breach by the board. Hence mandamus was proper.[19]

The situation here is analogous. The School District attempts to distinguish *Burns* by arguing that section 17-1704(a)(8) was clear authority to terminate the contracts. Based on our discussion above, which decided that Plaintiffs could not be terminated under section 17-1704(a)(8) unless consistent with the Improvement Plan, Plaintiffs did have a clear right to relief and a corresponding duty in the School District not to terminate them unless consistent with the Plan.[20]

---

[19] The commonwealth court later applied *Burns* to the suspension of a superintendent in *Antonini v. Western Beaver Area Sch. Dist.*, 874 A.2d 679 (Pa. Commw. Ct. 2005), another case Plaintiffs cite, and ruled that the plaintiff there was also entitled to mandamus relief.

[20] *Burns* and *Antonini* both dealt with a superintendent's statutory relationship with a school district and a school board, and here we also deal with a deputy superintendent and an assistant superintendent. Defendants do not address this aspect of the case in arguing against mandamus, so we will not do so.

We must decide who are proper defendants on this claim.  Because mandamus is equitable in nature, *WeCare Organics, L.L.C. v. Zoning Hearing Board*, 954 A.2d 684, 691 (Pa. Commw. Ct. 2008), we believe that the School District, the Elected School Board and the Elected Board members should remain as defendants on that part of the mandamus claim seeking reinstatement.  *See also Burns*, *supra*, 748 A.2d at 1270 n.18 (directing that the mandamus order name the school board collectively and the incumbent members of the board because it is the function of the sitting board to adhere to the law); *see also Stackhouse v. Commonwealth of Pennsylvania, Pennsylvania State Police*, 892 A.2d 54, 59 n.6 (Pa. Commw. Ct. 2006)(in the context of sovereign immunity, noting that immunity does not bar a mandamus action against individual officials to perform a ministerial act or a mandatory statutory duty).  The members of the Board of Control should not be defendants on this claim for the simple reason they are no longer in control of the School District.

On that part of the mandamus claim seeking damages, the School District will be the only defendant.  We agree with the members of the Board of Control and of the Elected Board that they are absolutely immune from suit, certainly as to damages, under the doctrine of absolute privilege for high public officials.  *See Lindner v. Mollan*, 544 Pa. 487, 490, 677 A.2d 1194, 1195 (1996).  That doctrine immunizes high public officials from state law claims for actions taken in the course of the official's duties or powers and within the scope of the official's authority.  *Id.*, 677 A.2d at 1195.  There is no doubt that, as defined in the doctrine, the Elected School Board members are high public officials, *see*

*Zugarek v. Southern Tioga Sch. Dist.*, 214 F. Supp. 2d 468, 479 (M.D. Pa. 2002)(citing cases); *Poteat, supra*, 33 F. Supp. 2d at 396, and that the members of the Board of Control are as well because of their equivalent status while running the School District. The decision to terminate Plaintiffs' employment was undertaken within the course of their official duties and within the scope of their authority.  Hence they are immune from state-law claims seeking damages.

    F.  *The Promissory Estoppel Claim Will Be Dismissed*

        Count VI is a state-law claim for promissory estoppel, based mainly on promises from the written contracts that termination would only be for good cause and only after notice and a hearing.  "In order to maintain an action in promissory estoppel, the aggrieved party must show that 1) the promisor made a promise that he should have reasonably expected to induce action or forbearance on the part of the promisee; 2) the promisee actually took action or refrained from taking action in reliance on the promise; and 3) injustice can be avoided only by enforcing the promise."  *Crouse v. Cyclops Indus.*, 560 Pa. 394, 403, 745 A.2d 606, 610 (2000).

        We have already decided that Plaintiffs' breach-of-contract claim can proceed.  We did decide that Plaintiffs could not enforce the contractual good-cause standard for dismissal because that term conflicted with the EEA.  However, we otherwise agreed with Plaintiffs that they could enforce the provisions of the agreements requiring notice and a hearing under section 10-1080 of the School Code and the Local Agency Law.  We also decided that the EEA's substantive standard for dismissal, if dismissal was

consistent with the improvement plan, would apply.  In these circumstances, Plaintiff has

no promissory estoppel claim as it does not appear injustice would result if we did not

enforce the promise of dismissal only for just cause.  We will therefore dismiss this claim.

G.  *The Claim for Declaratory Relief in Count II*

Count II seeks a declaratory judgment that the termination of Plaintiffs'

employment agreements "is void and of no force and effect."  (Am. Compl. CM/ECF p.

25).  Plaintiffs base this request on their contentions that the terminations violated: (1)

their right to due process under the federal and Pennsylvania Constitutions because made

without proper cause and without notice and hearing; (2) the School Code and Local

Agency Law; and (3) the EEA's requirement that rescission be consistent with the

Improvement plan.

Defendants move to dismiss this claim by contending that before declaratory

relief can be granted, there must first be a "justiciable controversy," *see Madden v. Nat'l

Ass'n of Basketball Referees*, 359 Pa. Super. 206, 209, 518 A.2d 853, 854 (1986), and

since termination of Plaintiffs' employment agreements was authorized by section 17-

1704-B(a)(8), there is no controversy to be resolved.  The School District additionally

argues that under the federal standard for granting declaratory relief discussed in *Iseley v.

Bucks County*, 549 F. Supp. 160, 166 (E.D. Pa. 1982), a declaratory judgment is not

justified.

We have decided that this claim should survive at this stage of the litigation.

Defendants' first point essentially argues that Plaintiffs' claims lack merit, but that does not

mean there is no justiciable controversy.  Further, we have already decided that

Defendants' interpretation of section 17-1704-B(a)(8) is erroneous and that the

mandamus, contract and federal civil-rights claims have merit.  As to the additional

argument made by the School District, it bears solely on declaratory relief under federal

law, and it is not clear whether the federal standard defeats the claim to the extent it is

made under state law.  For example, the standard set forth in *Iseley* allows consideration

of alternative remedies in deciding whether a declaratory judgment is appropriate, 549 F.

Supp. at 166, but Pennsylvania law prohibits consideration of alternative remedies.  *See*

42 Pa. Con. Stat. Ann. § 7541(b)(West 2007).

We must decide who are proper defendants on this count.  We believe all

the so-called School District Defendants should remain as defendants on this count,

meaning the School District; the Elected School Board and its members; and the Board of

Control and its members.

H.  *Count IV Will be Dismissed As the Court Has No Need to*
*Determine the Constitutionality of Section 17-1704-B(a)(8)*
*Under the Contract and Due Process Clauses of the Federal*
*and State Constitutions*

In Count IV, Plaintiffs' claim is that "[t]o the extent that Section 17-1704-

B(a)(8)" gives "absolute and unfettered discretion to school boards or boards of control to

rescind contracts, whether or not such action is actually consistent with a school district's

improvement plan and without notice and an  opportunity to be heard," section 17-1704-

B(a)(8) violates the Contract and Due Process Clauses of the federal and state Constitutions.  (Am. Compl. ¶ 181).[21]

We have already decided the statutory issue, ruling that section 17-1704-B(a)(8) does not confer unfettered authority to rescind employment agreements but that rescission must be consistent with the improvement plan.  We have also decided that Plaintiffs are entitled to due process both contractually and under the federal due process clause.  This count is therefore moot as to the due process claim.  As to the Contracts Clause claim, we are obligated not to decide constitutional questions unless necessary. *New Directions Treatment Services v. City of Reading*, 490 F.3d 293, 301 n.5 (3d Cir. 2007), and we have already decided that Plaintiffs may contractually enforce procedural rights set forth in section 10-1080 of the School Code and in the Local Agency Law. There is therefore no need to decide the Contracts Clause claim either, and we will dismiss count IV as moot.

I. *Count VIII Fails to State a Claim Because Damages Cannot Be Recovered for Violations of Section 10-1080 of the School Code or the Local Agency Law*

In Count VIII, Plaintiffs seek damages for the violation of rights conferred under section 10-1080 of the School Code and the Local Agency Law.  In moving to dismiss this count, Defendants contend Plaintiffs cannot seek damages for violations of these statutes.  We agree.  *See Coreia v. Schuylkill County Area Vocational-Technical*

---

[21]     See U.S. Const. Art. I, § 10 and Pa. Const. Art. I, § 17 for the Contract Clauses and U.S. Const. Amend XIV and Pa. Const. Art. 1, § 1 for the Due Process Clauses.

46

*Sch. Auth.*, No. 04-2425, 2006 WL 1310879, at *11 (M.D. Pa. May 11, 2006)

(Pennsylvania School Code has no provision allowing a private cause of action for

damages)(citing *Lindsay v. Thomas*, 77 Pa. Commw. 171, 174-75, 465 A.2d 122, 123-24

(1983)); *Augustine v. Turkeyfoot Valley Area School Sch. Dist.*, 9 Pa. D.&C.3d 147, 179

n.14 (Somerset County Common Pleas Ct. 1977)(the Local Agency Law does not provide

for money damages).  We will therefore dismiss Count VIII.

       We will issue an appropriate order.


        /s/William W. Caldwell
       William W. Caldwell
       United States District Judge


Date: September 22, 2011

47

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

GERALD KOHN, et al.,                          :

       Plaintiffs                        :

                        :

       vs.                               :          CIVIL NO. 1:CV-11-0109

                        :

SCHOOL DISTRICT OF THE CITY OF    :
HARRISBURG, et al.,
         Defendants                    :

*O R D E R*

AND NOW, this 22nd day of September, 2011, upon consideration of the following motions to dismiss under Fed. R. Civ. P. 12(b)(6), the motion (doc. 34) by the School District, the motion (doc. 35) by Christ and Edwards, the motion (doc. 37) by the Elected School Board and its members, the motion (doc. 39) by the Board of Control and its members; the motion (doc. 50) by Mayor Thompson, and also upon consideration of the motion (doc. 38) to dismiss under Fed. R. Civ. P. 12(b)(5) by the Board of Control, it is ordered that:

    1.  The motion (doc. 50) to dismiss by defendant, Mayor Linda Thompson, is granted, Count VII of the amended complaint is hereby dismissed, and Mayor Thompson is dismissed from this action.

    2.  The motion (doc. 38) to dismiss under Fed. R. Civ. P. 12(b)(5) by the Board of Control is denied.

    3.  The motions to dismiss Count V, the breach-of-contract claim, are denied except that this count shall proceed only

against the defendant School District.  This count is dismissed as against all other defendants.

4.  The motions to dismiss Count III, the federal due process claim, are denied except that the Elected School Board and the Board of Control are dismissed as defendants on this count. This count shall proceed against the remaining defendants, the School District, and the individual defendants in their personal capacities.

5.  The motions to dismiss Count I, the state-law mandamus claim, are denied except that this count shall proceed only against the School District, the Elected Board and the Elected Board members.  This count is dismissed as against the Board of Control and its members.  Any claim for damages against the Elected School Board members is dismissed.

6.  The motions to dismiss Count IV, the declaratory judgment claim against 24 Pa. Stat. Ann. § 17-1704-B(a)(8) on the bases of the Contract and Due Process Clauses of the federal and state Constitutions; Count VI, the promissory estoppel claim; and Count VIII, the claim for damages based on a violation of the School Code and the Local Agency Law, are granted, and Count IV, Count VI, and Count VIII are hereby dismissed.

7.  The motions to dismiss Count II, the declaratory judgment claim seeking a declaration that the termination of the employment agreements is void and of no force and effect, are denied and this claim shall proceed as against all defendants.


 /s/William W. Caldwell
William W. Caldwell
United States District Judge