IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GERALD KOHN, *et al.*, | : | |
| Plaintiffs | : | |
| | : | |
| v. | : | CIVIL NO. 1:11-CV-109 |
| | : | |
| SCHOOL DISTRICT OF THE CITY OF | : | |
| HARRISBURG, *et al.*, | : | |
| Defendants | : | |

*M E M O R A N D U M*

I.   *Introduction and Procedural History*

We are considering the validity of a third-party complaint and two cross-claims.  This action was initiated by the plaintiffs, Gerald Kohn, Julie Botel, and Rebecca Hostetler.  Plaintiffs are the former superintendent of the Harrisburg School District, the deputy superintendent, and the assistant superintendent, respectively.  They are contesting the termination of their employment, accomplished without notice or a hearing.  There are two main claims.  One is under 42 U.S.C. § 1983, alleging the terminations violated Plaintiffs' Fourteenth Amendment right to due process.  The other is under state law, alleging breach of contract because Plaintiffs' employment agreements allowed termination only for good cause and only after notice and a hearing.

Plaintiffs named the following defendants: the School District; the District's Board of Control and its members, Gloria Martin-Roberts, Herbert Goldstein, Autumn Cooper, Sanford Long, Jennifer Smallwood, Roy E. Christ, and Esther E. Edwards;

the "Elected School Board" and its members, Lola D. Lawson, Lionel Gonzalez, Wayne L. Henry, Randy King, Jeffrey Moore, Tiffiney Penn, Patricia Whitehead-Myers, Roy E. Christ, and Esther E. Edwards.  Also named as a defendant was Linda D. Thompson, the Mayor of the City of Harrisburg.

Plaintiffs filed an amended complaint, and several motions to dismiss were filed.  In pertinent part, upon consideration of those motions, we dismissed a due-process stigma-plus claim against Mayor Thomson and dismissed her from the action as that was the only claim made against her.  We also decided that the due-process and breach-of-contract claims could proceed.  See 817 F. Supp. 2d 487 (M.D. Pa. 2011).

In the wake of our decision, the defendant School District filed a third-party complaint adding as defendants James E. Ellison, Esq., and Rhoads & Sinon, LLP, the law firm where he practices, and bringing Mayor Thompson back into the case as a third-party defendant.  At the same time, the School District also filed a cross-claim against the members of the Board of Control who had been appointed by the Mayor: Gloria Martin-Roberts, Herbert Goldstein, Autumn Cooper, Sanford Long, and Jennifer Smallwood.  In turn, the Board of Control and its mayor-appointed members filed a cross-claim against Ellison and Rhoads & Sinon.

The parties against whom these pleadings were filed have filed motions to dismiss them.  The reasons urged for dismissal are procedural as well as substantive.

2

II.   *Background*

Familiarity with the background of this litigation as set forth in our previous memorandum is assumed.  817 F. Supp. 2d at 493-97.  As noted, the School District's third-party complaint is against attorney Ellison, his law firm, and Mayor Thompson.[1]  It alleges the following.[2]

The mayor-appointed members of the Board of Control voted to terminate Kohn's and Botel's employment agreements on March 15, 2010, and to terminate Hostetler's agreement on May 17, 2010.  (Doc. 83, Third-Party Compl. ¶¶ 13 and 17). Rhoads & Sinon began its formal representation of the Board of Control on May 17, 2010, (*id.* ¶¶ 39 and 40), but before then Ellison's "legal advice, if any, in regard to the due process rights owed to Plaintiffs Kohn[,] Botel [and Hostetler] and potential liability of the School District, fell below the appropriate standard of care." (*Id.* ¶¶ 16 and 20).  The terminations were accomplished by the adoption of resolutions.  (*Id.* ¶¶ 14 an 18). Ellison is believed to have advised about, or even prepared, the resolutions terminating Plaintiffs.  (*Id.* ¶ 21).  These resolutions fell below the appropriate standard of care.  (*Id.*

---

[1]   The School District has labeled its third-party complaint a "joinder complaint."  As third-party defendants observe, while such terminology is used in Pennsylvania practice, see Pa. R. Civ. P. 2252, in federal practice, a joinder complaint is called a third-party complaint. *See* Fed. R. Civ. P. 7(a)(5) and 14(a).  Of course, as a federal court, we adhere to federal practice and will refer to the School District's pleading as a third-party complaint.  *See Rocuba v. MacKrell*, No. 10-1465, 2011 WL 5869787, at *1 n.3 (M.D. Pa. Nov. 22, 2011) ("joinder complaint" would be construed as a third-party complaint under Rule 7(a)(5)).

[2]   The two cross-claims essentially reiterate pertinent allegations of the third-party complaint, so we do not set those forth at length here, but provide the necessary background on them in dealing with the motions to dismiss those pleadings.

3

¶ 22).  Ellison also gave legal advice about the terminations, saying "that the School District would be subject to little or no liability for the rescission and/or termination of Plaintiffs' Employment Agreements; that such actions were iron clad and bombproof." (*Id.* ¶ 44).  Further, "Ellison advised the Board of Control that no due process was required prior to the rescission and/or termination of Plaintiffs' Employment Agreements." (*Id.* ¶ 45).

Count I of the third-party complaint is a federal civil-rights conspiracy claim against third-party defendants Thompson and Ellison.  The School District alleges that these parties, along with the mayor-appointed members of the Board of Control, conspired to terminate Plaintiffs' employment agreements in violation of 42 U.S.C. § 1985 and Plaintiffs' right to due process under the Fourteenth Amendment.  (*Id.* ¶¶ 50, 55).  Thompson, Ellison and the mayor-appointed members of the Board of Control acted "to injure Plaintiffs and advance the political position of Third-Party Defendant Thompson."  (*Id.* ¶ 57).[3]  Ellison furthered the conspiracy by giving "insufficient and incompetent advice" that the termination of the agreements "was without recourse or potential liability for the School District."  (*Id.* ¶ 52).

---

[3]     As the Mayor's motivation for injuring Plaintiffs, the School District incorporates certain paragraphs of Plaintiffs' amended complaint.  In those paragraphs, Plaintiffs aver that the Mayor wanted to "get even" with Kohn because he had agreed with a recommendation that the School District's contract with a non-profit corporation called Loveship, Inc. be cancelled for performance issues.  The Mayor was the president of Loveship, Inc.  (*Id.* ¶ 24, incorporating ¶¶ 113-124 of the amended complaint).

Defendant School District alleges that if it is found that Plaintiffs' due-process rights were violated when their employment agreements were terminated, then third-party defendants Thompson, Ellison and the mayor-appointed members of the Board of Control "are solely liable to Plaintiffs for any and all damages . . . ." (*Id.* ¶ 61). Alternatively, if the School District is held liable to Plaintiffs for any damages, then third-party defendants Thompson, Ellison, and the mayor-appointed members of the Board of Control are liable over to the School District by way of contribution and/or indemnification . . . ." (*Id.* ¶ 62). The School District also alleges that these parties are "jointly and severally liable with the School District." (*id.* ¶ 63).

Count II of the third-party complaint is a state-law claim for tortious interference with contract. Defendant School District alleges that Mayor Thompson, Ellison, and the mayor-appointed members of the Board of Control tortiously interfered with the employment contracts between Plaintiffs and the School District, resulting in termination of the agreements without justification. (*Id.* ¶¶ 67 and 69). These parties acted with the intent of harming the parties to the employment agreements, (*id.* ¶ 67), and have injured the School District by denying the District "the benefit of Plaintiffs' contract[s], . . . forc[ing] it to pay alternative employees to fulfill Plaintiffs' positions," causing it to "incur[ ] substantial fees for legal defense," and exposing it to the "risk of liability to Plaintiffs." (*Id.* ¶ 70). On this count, the School District seeks damages in its favor in excess of $75,000. It also reiterates its claims that Mayor Thompson, Ellison, and the mayor-appointed members of the Board of Control "are solely liable to Plaintiffs

for any and all damages," (*id.* ¶ 73), or liable to the School District for contribution or indemnity, (*id.* ¶ 74), or "jointly and severally liable with the School District."  (*Id.* ¶ 75).

Count III of the third-party complaint is a state-law claim for legal malpractice against attorney Ellison.  The defendant School District alleges that it had an attorney-client relationship with Ellison and that he breached the professional standard of care by giving incompetent advice that the termination of Plaintiffs' employment agreements "was ironclad and/or bombproof."  (*Id.* ¶¶ 77, 79 and 80).  As a result, Ellison injured the School District by denying the District "the benefit of Plaintiffs' contract[s], . . . forc[ing] it to pay alternative employees to fulfill Plaintiffs' positions," causing it to "incur[ ] substantial fees for legal defense," and exposing it to the "risk of liability to Plaintiffs." (*Id.* ¶ 85).  On this count, the School District seeks damages against Ellison in its favor in excess of $75,000.  It also reiterates its claim that Ellison "is solely liable to Plaintiffs for any and all damages," (*id.* ¶ 87), or liable to the School District for contribution or indemnity, (*id.* ¶ 88), or "jointly and severally liable with the School District."  (*Id.* ¶ 89).

Count IV is a claim against Rhoads & Sinon based on its vicarious liability for the advice of Ellison.  This count also asserts that Rhoads & Sinon "is solely liable to Plaintiffs for any and all damages . . . ." (*Id.* ¶ 96).  Alternatively, if the School District is held liable to Plaintiffs for any damages, then Rhoads & Sinon "is liable over to the School District by way of contribution and/or indemnification . . . ." (*Id.* ¶ 97).  The School District also alleges that Rhoads & Sinon is "jointly and severally liable" with the School District.  (*Id.* ¶ 98).

6

III. *Discussion*

    A. *Attorney Ellison's and Rhoads & Sinon's Motion to Dismiss*
       *the Third-Party Complaint As Against Them*

    Fed. R. Civ. P. 14(a)(1) provides that a "defending party may, as third-party plaintiff, serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it."  Based on this language, the defendant cannot plead a claim that the third-party defendant is directly liable to the plaintiff or a claim that the third-party defendant is solely responsible for the plaintiff's injury.  *Toberman v. Copas*, 800 F. Supp. 1239, 1242 (M.D. Pa. 1992).  Instead, the defendant must plead the secondary or derivative liability of the third-party defendant, meaning that if the defendant is found liable to the plaintiff, the third-party defendant is liable to the defendant on a theory of indemnity or contribution, or some other form of derivative liability.  *Id.  See also FDIC v. Bathgate*, 27 F.3d 850, 873 (3d Cir. 1994) (Rule 14 allows a defendant (as a third-party plaintiff) to bring a third-party defendant into the case when the third-party defendant is liable to the defendant on all or part of the plaintiff's claim against the defendant).

    Rule 14 is only procedural and does not itself create a right to indemnity or contribution.  *Foulke v. Dugan*, 212 F.R.D. 265, 269 (E.D. Pa. 2002).  Those rights must come from the applicable substantive law.  *Id.* at 269-70.  Here, the defendant School District relies on Pennsylvania law.  Under Pennsylvania law, the right to indemnity is contractual or arises when a person not actively at fault has been compelled by a legal

obligation to pay damages that have been caused by the tortious conduct of another.  *Id.*

at 270 (quoting *Builders Supply Co. v. McCabe*, 366 Pa. 322, 325, 77 A.2d 368, 370

(1951)).

A right to contribution arises only among joint tortfeasors.  *Id.*

Pennsylvania's definition of joint tortfeasors is multifarious.  In *Lasprogata v. Qualls*, 263

Pa. Super. Ct. 174, 179, n.4, 397 A.2d 803, 805 n.4 (1979), the Pennsylvania Superior

Court quoted Black's Law Dictionary.  The court said that joint tortfeasors "either act

together in committing the wrong, or their acts, if independent of each other, must unite

in causing a single injury" or they are "two or more persons [who] owe to any other the

same duty and by their common neglect such other is injured."  In *Voyles v. Corwin*, 295

Pa. Super. Ct. 126, 130-31, 441 A.2d 381, 383 (1982), the superior court said a number

of factors should be considered, identifying them as:

> the identity of a cause of action against each of two or more
> defendants; the existence of a common or like duty; whether
> the same evidence will support an action against each; the
> single, indivisible nature of the injury to the plaintiffs; identity
> of the facts as to time, place or result; whether the injury is
> direct and immediate, rather than consequential, responsibility
> of the defendants for the same *injuria* as distinguished from
> *damnum.*

*Id.* at 130-31, 441 A.2d at 383.

Courts cite both *Lasprogata* and *Voyles* but rely on the language that

seems most appropriate for the case at hand.  *See, e.g., Smith v. Pulcinella*, 440 Pa.

Super. Ct. 525, 528-29, 531, 656 A.2d 494, 496-97 (1995) (citing both *Lasprogata* and

*Voyles* but relying on *Lasprogata*'s language in determining the defendant was a joint

tortfeasor); *Neal v. Bavarian Motors, Inc.*, 882 A.2d 1022, 1027-28 (Pa. Super. Ct. 2005) (same); *Ariondo v. Munsley*, 122 Pa. Commw. Ct. 475, 488, 553 A.2d 94, 100 (1989) (refusing to mechanically run through the *Voyles* factors and deciding that the defendants were joint tortfeasors because their acts united to cause a single injury), *rev'd on other grounds*, *Conner v. Munsley*, 533 Pa. 143,  620 A.2d 1103 (1993).

Other courts simply cite the most appropriate language.  *See Harsh v. Petroll*, 840 A.2d 404, 441 n.35 (Pa. Commw. Ct. 2004) ("Joint tortfeasors are defined as '[t]hose who act together in committing wrong, or whose acts if independent of each other, unite in causing single injury.'") (quoting Black's Law Dictionary); *LaZar v. RUR Indus., Inc.*, 337 Pa. Super. Ct. 445, 450, 487 A.2d 29, 32 (1985) ("[j]oint tortfeasors exist where 'two or more persons owe to any other the same duty and by their common neglect such other is injured'") (quoting *Lasprogata*).[4]

In moving to dismiss the third-party complaint, Ellison and his law firm first point out that it seeks to impose sole liability on them for Plaintiffs' claims when Rule 14 does not permit joinder based on a third-party defendant's sole liability to the plaintiffs. The School District does not oppose this argument, and we agree with Ellison and Rhoads & Sinon.  The third-party complaint therefore cannot proceed against these third-party defendants to the extent it is based on their sole liability to Plaintiffs.  *Toberman, supra,* 800 F. Supp. at 1242.

---

[4]   We also note that in *Glomb v. Glomb*, 366 Pa. Super. Ct. 206, 213, 530 A.2d 1362, 1366 (1987), the superior court said the *Voyles* factors are used simply to determine if apportionment of damages between joint tortfeasors is possible.

9

### 1.  *The Legal Malpractice Claim*

Turning to the malpractice claim, third-party defendants next argue that the School District has no claim for indemnity or contribution against them because the malpractice claim "does not sound in indemnification or contribution or is otherwise derivative of the plaintiffs' claims against the School District." (Doc. 101, Supp'n Br. at p. 7).[5]  In opposition, the School District asserts that it is entitled to indemnification or contribution for three reasons.  First, "[t]hrough no fault of its own," it may be required to pay Plaintiffs damages as a result of Ellison's negligent advice. (Doc. 109, Opp'n Br. at 5).  Second, to the extent it is liable to Plaintiffs, Ellison is liable to the School District, regardless of whether he is directly liable to Plaintiffs. (*Id.*).  Third, its legal malpractice claim is "derivative" of Plaintiffs' claims because "Plaintiffs' success in the underlying complaint is a necessity to School District's claim against Attorney Ellison for malpractice." (*Id.* at p. 6).

We start with whether the defendant School District is entitled to indemnity. As noted, this is a matter of substantive law, and as third-party defendants point out in their reply brief, the School District does not allege any contractual right to indemnity, nor any judicially recognized right to indemnity by virtue of not being actively at fault.  In its

---

[5]   They cite in support *City of Orange Beach v. Scottsdale Ins. Co.*, 166 F.R.D. 506, 511 (S.D. Ala. 1996), but we fail to see how this case helps them.  Third-party defendants do not cite to a particular portion of the opinion, merely noting parenthetically the court's ruling, dismissal of a third-party complaint against a law firm for legal malpractice.  We note that the case applied Alabama law in deciding the procedural issue while we have to apply Pennsylvania law on indemnity and contribution, so we do not see its relevance.

opposition brief, the School District asserts that it may be liable to Plaintiffs through no fault of its own, but that is not correct, at least in relation to Ellison and Rhoads & Sinon. The mayor-appointed members of the Board of Control, the School District's agents, the voted to terminate Plaintiffs' employment agreements.  Granted, they may not have done so if the alleged advice from Ellison was to the contrary, but their votes mean that the School District cannot claim to be passively liable and therefore entitled to indemnity from Ellison and Rhoads & Sinon.  The other two reasons advanced have no bearing on an indemnity claim.  The third-party legal malpractice claim therefore cannot proceed on a theory of indemnity.

We turn now to whether the School District can assert a claim for contribution.  As noted above, a right to contribution arises only among joint tortfeasors, and many factors are considered, alone or in combination, in determining joint-tortfeasor status.  At least one of those factors would indicate joint-tortfeasor status between the School District and attorney Ellison.  As the School District asserts, Ellison's advice led to the decision of the mayor-appointed members of the Board of Control to terminate Plaintiffs' employment agreements, so it appears that their actions, either performed together, or done independently, united to cause a single injury to each Plaintiff.

The difficulty with this argument is that joint tortfeasors must owe the "same duty" to the plaintiff, at least in the sense that they each owe a duty to the plaintiff, even if the cause of action is different.  *See Smith v. Kolcraft Products, Inc.*, 107 F.R.D. 767, 770 (M.D. Pa. 1985) (driver charged with negligence was a joint tortfeasor with the

11

defendant manufacturer of a infant car seat sued under theory of strict liability in tort).

The same-duty factor appears in both *Lasprogata* ("two or more persons [who] owe to

any other the same duty") and *Voyles* ("the existence of a common or like duty").

Here, it cannot be shown that both Ellison and the mayor-appointed Control

Board members had a duty to Plaintiffs.  The members did, but not Ellison because

Plaintiffs cannot establish that he had a duty to them in regard to his professional advice.

He was neither in privity with them nor were they third-party beneficiaries of any contract

he had with the School District.  *See Sabella v. Estate of Milides*, 992 A.2d 180, 187 (Pa.

Super. Ct. 2010).  Since Ellison had no duty to Plaintiffs, he cannot be a joint tortfeasor

with the School District.  *See LaZar*, *supra*, 337 Pa. Super. Ct. at 450, 487 A.2d at 32

(labor unions were not joint tortfeasors with the defendant company when they "had no

duty to refrain from creating an atmosphere of violence").  It follows that neither he nor

his law firm can be joined on the basis of the legal malpractice claim.

2.  *The Civil Conspiracy Claim*

The School District also seeks indemnity and contribution on the federal

civil-rights conspiracy claim.  As noted, the School District alleges a conspiracy to violate

Plaintiffs' due-process rights as well as their rights under 42 U.S.C. § 1985(3) and injury

to Plaintiffs as a result.[6]  The moving third-party defendants argue this claim must be

---

[6]    This claim cites section 1985, but the only part of that section that would apply
here is section 1985(3).  We agree with Ellison and Rhoads & Sinon that the conspiracy claim
cannot proceed under section 1985(3) because that section requires a showing of racial or
class-based animus and the School District makes no such allegations.  *See Farber v. City of*

dismissed because the School District cannot show that the substantive law entitles it to indemnity or contribution.

We agree with Ellison and Rhoads & Sinon that the School District has made no showing that it is entitled to indemnity from them.  It does not allege any contractual right to indemnity, nor can it allege that it is only "passively" liable in relation to the moving defendants and so entitled to indemnity that way.  As noted, the School District is liable for the conduct of the mayor-appointed members of the Board of Control, who voted to terminate Plaintiffs' employment agreements.  Those votes mean that the School District cannot claim to be passively liable and therefore entitled to indemnity from Ellison and Rhoads & Sinon.

We reach a different result on the contribution claim.  The School District owed a duty to Plaintiffs not to violate their due-process rights.  Ellison and Rhoads & Sinon are not state actors, but if Ellison conspired with state actors to violate Plaintiff's due-process rights, he would share in their liability to Plaintiffs.[7]  Looked at from a joint-tortfeasor perspective, Ellison acted together with the mayor-appointed members of the Board of Control in committing the wrongs, i.e., the terminations.  His advice combined

---

*Paterson*, 440 F.3d 131, 135 (3d Cir. 2006).  However, since the claim also asserts a violation of Plaintiffs' due-process rights, it also asserts a conspiracy claim based on a violation of 42 U.S.C. § 1983.

[7]   A civil-rights claim requires state action, but a private party who conspires with a state actor can be liable under section 1983.  *Great Western Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 175-76 (3d Cir. 2010).  We put aside for the moment whether Rhoads & Sinon can be vicariously liable for Ellison's alleged conduct in conspiring with state actors to violate an individual's civil rights.

with the members' votes to inflict the injury on each Plaintiff.[8]  It follows that the civil-rights conspiracy claim can proceed against attorney Ellison and Rhoads & Sinon on a theory of contribution.[9]

### 3.   *The Claim for Tortious Interference With Contract*

As noted, Count II of the third-party complaint is a state-law claim for tortious interference with contract.  Defendant School District alleges that Mayor Thompson, Ellison, and the mayor-appointed members of the Board of Control tortiously interfered with the employment contracts between Plaintiffs and the School District, resulting in termination of the agreements without justification, and inflicting damage on Plaintiffs and the School District.

For the reasons set forth above, to the extent this claim is based on the sole liability of the moving third-party defendants or on indemnity, the claim is not

---

[8]    The School District argues that the conspiracy claim is validly brought under Rule 14(a) because it alleges "that (1) Attorney Ellison reached an agreement with Mayor Thompson and her appointed Board of Control; (2) to unlawfully and intentionally interfere with the School District's contractual rights with Plaintiffs; (3) without justification for the sole purpose of harming School District and Plaintiffs."  (Doc. 109, Opp'n Br. at p. 8).
    We disagree.  The conspiracy claim makes no such allegations.  As noted, it alleges that Plaintiffs' due-process rights and rights under section 1985(3) were violated and that Plaintiffs were injured.  It does not mention any contractual rights of the School District that were violated.

[9]    The validity of a contribution claim on a federal cause of action, such as the conspiracy claim here, is governed by federal law.  *Tara M. v. City of Philadelphia*, 145 F.3d 625, 629 (3d Cir. 1998) ("federal law ordinarily controls issues of contribution when the tort feasors are alleged to share a federal liability").  Some courts have decided that there is no right to contribution on a section 1983 claim.  *See Rocuba v. MacKrell*, No. 10-1465, 2011 WL 5869787, at *3 (M.D. Pa. Nov. 22, 2011) (collecting cases).  The issue is far from clear, and we decline to address it when not raised by the parties.

properly joined under Rule 14(a).  However, we believe that it has sufficiently alleged

joint tortfeasor status with Ellison and Rhoads & Sinon so that this claim can proceed on

a theory of contribution.

As noted, the gravamen of Plaintiffs' amended complaint is the termination

of their employment agreements.  Plaintiffs allege that the termination was wrongful in

two ways: (1) it was a breach of contract because the employment agreements gave

Plaintiffs a contractual right to notice and a hearing before they were terminated; and (2)

it violated the Fourteenth Amendment because Plaintiffs had a due-process right to

notice and a hearing before they were terminated.  A right to contribution does not exist

on a breach-of-contract claim because the School District cannot establish joint

tortfeasor status on such a claim.  *See Pine Grove Manufactured Homes v. Indiana

Lumbermen's Mut. Ins. Co.*, No. 08-1233, 2009 WL 4810560, at *2-3 (M.D. Pa. Dec. 8,

2009); *E. Elec. Corp. of New Jersey v. Rumsey Elec. Co.*, No. 08-5478, 2010 WL

1444584, at *2 (E.D. Pa. April 8, 2010); *Unique Tech., Inc. v. Micro-Stamping Corp.*, No.

02-6649, 2003 WL 21652284, at *3 (E.D. Pa. April 15, 2003).  *But see Resolution Trust

Corp. v. Gross*, No. 93-5056, 1996 WL 89380, at *2 (E.D. Pa. Feb. 22, 1996) (observing

that right to contribution on contract claims may exist in Pennsylvania but not needing to

resolve the issue).

However, the School District has established joint tortfeasor status for the

due-process violation.  The due-process claim is brought pursuant to 42 U.S.C. § 1983,

and is a constitutional tort.  Ellison would be a joint tortfeasor with the Mayor and the

15

mayor-appointed members of the Board of Control because they are alleged to have acted together in committing the wrongs, i.e., the terminations.[10]  Thus, the claim for tortious interference with contract is a valid third-party claim under Rule 14(a) against Ellison and Rhoads & Sinon and will not be dismissed.

4. *The Legal Malpractice Claim Can Be Joined by Way of Fed. R. Civ. P. 18(a)*

Since the claims for civil conspiracy and tortious interference with contract are valid third-party claims under Rule 14(a), we must decide if the legal malpractice claim can be pursued by way of Fed. R. Civ. P. 18(a).  In pertinent part, Rule 18(a) permits a party bringing a "third-party claim" to "join as independent, or alternative claims, as many claims as it has against an opposing party."  The latter claims must satisfy supplemental jurisdiction; they must be "part of the same case or controversy under Article III of the United States Constitution," 28 U.S.C. § 1367(a), as the third-party claims for civil conspiracy and tortious interference.  *See Schwab v. Erie Lackawanna R.R. Co.*, 438 F.2d 62, 68-69, 70 (3d Cir. 1971) (Rule 18(a) allows the defendant with a valid Rule 14(a) claim to make an affirmative claim for relief against the third-party defendant as long as the court has jurisdiction over the latter claim, jurisdiction described as arising from the same transaction or occurrence as the Rule 14(a) third-party claim).

---

[10]   As noted above in note 9, the validity of a contribution claim on a federal cause of action, such as Plaintiffs' due-process claim here, is unsettled, so we decline to address it when not raised by the parties.

16

Claims are part of the same case or controversy if they arise from a common nucleus of operative fact such that the claimant would be expected to try them together.  *See Pryzbowksi v. U.S. Healthcare, Inc.*, 245 F.3d 266, 275 (3d Cir. 2001). "Under Third Circuit jurisprudence, 'mere tangential overlap of facts is insufficient [to constitute a common nucleus of operative fact], but total congruity between the operative facts . . . is unnecessary.'"  *Doe v. Liberatore*, 478 F. Supp. 2d 742, 757 (M.D. Pa. 2007) (quoting *Nanavati v. Burdette Tomlin Mem'l Hosp.,* 857 F.2d 96, 105 (3d Cir. 1988)) (brackets added in *Doe*).

There is a common nucleus of operative fact between the claims for civil conspiracy and tortious interference with contract and the legal malpractice claim.  The federal civil-rights conspiracy claim has the following elements: (1) action under color of state law (2) that violated a federal constitutional or statutory right (3) by way of a conspiracy.  *Robinson v. Hicks*, 450 F. App'x 168, 175 (3d Cir. 2011) (nonprecedential). The tortious-interference claim has the following elements: "(1) the existence of a contractual relationship; (2) an intent on the part of the defendant to harm the plaintiff by interfering with that contractual relationship; (3) the absence of a privilege or justification for such interference; and (4) damages resulting from the defendant's conduct."  *Haun v. Cmty. Health Sys., Inc.*, 14 A.3d 120, 124 (Pa. Super. Ct. 2011).  "A cause of action for legal malpractice contains three elements: the plaintiff's employment of the attorney or other grounds for imposition of a duty; the attorney's neglect to exercise ordinary skill and knowledge; and the occurrence of damage to the plaintiff proximately caused by the

17

attorney's misfeasance." *Epstein v. Saul Ewing, LLP*, 7 A.3d 303, 313 (Pa. Super. Ct. 2010).

There is a common nucleus of operative fact because the existence of the contracts, Plaintiffs' terminations, facts bearing on why they were terminated, and the legality of their terminations will be presented on all the claims. Certainly, Ellison's legal advice and its soundness will bear on both the absence of privilege or justification for terminating the agreements (the tortious-interference claim) and on whether he exercised ordinary skill and knowledge in rendering that advice (the legal malpractice claim).

In sum, we will allow the federal civil-rights conspiracy claim and the tortious-interference claim to proceed against Ellison and Rhoads & Sinon by way of contribution. The School District may also pursue its legal malpractice claim against these third-party defendants by way of Rule 18(a).

> B.  *Mayor Thompson's Motion to Dismiss the School District's Third-Party Complaint as Against Her*

The School District's third-party complaint brings Mayor Thompson back into the case as a third-party defendant. She has been named in the federal civil conspiracy claim in Count I and in the tortious-interference-with-contract claim in Count II.

Characterizing both claims as state-law ones, Mayor Thompson first moves to dismiss both counts on the basis of high public official immunity under Pennsylvania law. If applicable, high public official immunity would bar both claims, if they were both

state-law claims.  However, as noted, the civil conspiracy claim is a federal one, alleging

a conspiracy to violate Plaintiffs' due-process rights.  As we noted in our earlier

memorandum in this case, the state-law doctrine of high public official immunity shields

officials only from state-law claims, not federal ones.  *Kohn*, *supra*, 817 F. Supp. 2d at

508.

We therefore examine the immunity defense only in connection with the

tortious-interference claim.  The doctrine of high public official immunity:

> is unlimited and exempts a high public official from all civil
> suits for damages arising out of false defamatory statements
> and even from statements or actions motivated by malice,
> provided the statements are made or the actions are taken in
> the course of the official's duties or powers and within the
> scope of his authority, or as it is sometimes expressed, within
> his jurisdiction.

*Lindner v. Mollan*, 544 Pa. 487, 490, 677 A.2d 1194, 1195 (1996) (quoting *Matson v.*

*Margiotti*, 371 Pa. 188, 194, 88 A.2d 892, 895 (1952)).

The immunity is not for the benefit of the public official but for the benefit of

the public.  *Id.* at 491, 677 A.2d at 1195 (quoted case omitted).  It protects the official

from suit, even when an individual has suffered an injury, for the "deeper purpose" of

allowing officials to perform their duties in an uninhibited way.  *Id.* at 491, 677 A.2d at

1196.  Thus, the immunity applies even when it is alleged that the official acted from

personal or political motives, or from malice, "or want of reasonable or probable cause."

*Osiris Enterprises v. Borough of Whitehall*, 877 A.2d 560, 566 (Pa. Commw. Ct. 2005).

19

High public official immunity applies here: (1) if the Mayor is a high public official; and (2) her conduct was performed in the course of her duties or powers and within the scope of her authority as mayor. *Lindner*, *supra*, 544 Pa. at 495, 497, 677 A.2d at 1198, 1199.

There is no doubt that Mayor Thompson qualifies as a high public official. *Id.* at 496, 677 A.2d at 1198 ("There is no more important local public official than a mayor."). It is also evident that her conduct was within the course of her duties and powers as mayor as well as within the scope of her authority. As summarized in our previous memorandum, the Mayor acted within the power and authority conferred on her by the Education Empowerment Act ("EEA"), 24 Pa. Stat. Ann. § 17–1701–B to § 17–1716–B (West 2006 & West Supp. 2011) (expired). The School District had been certified as an "education empowerment district" under the EEA. That meant that the Board of Control took over the management of the District from the Elected School Board.[11] At the time Mayor Thompson acted, the Board of Control had seven members and five were appointed by the Mayor, serving at her pleasure, pursuant to the EEA. 24 Pa. Stat. Ann. § 17–1707–B(b)(3) (West Supp. 2011) (expired). Undoubtedly, any of her actions, including any alleged direction to the members of the Board of Control she had appointed, were within the authority conferred on her by the EEA to direct the affairs of the School District.

---

[11]    The Elected School Board retained authority over raising taxes.

We reject the School District's arguments to the contrary.  First, they argue that the issue of the Mayor's immunity should not be decided at the motion-to-dismiss stage.  However, we see no need to postpone a decision.  There may be cases like *Ferrone v. Onorato*, 439 F. Supp. 2d 442, 455 (W.D. Pa. 2006), cited by the School District, where facts are needed to decide if an official qualifies as a high public official, but here we know without a doubt that the Mayor qualifies as a high public official, and we know all the other facts necessary to decide the issue of immunity.

Second, the School District argues the Mayor was not acting within the course of her duties and the scope of her authority because: (1) the conspiracy is alleged to have begun before she became mayor; (2) she acted to retaliate against plaintiff Kohn because he terminated her non-profit's contract with the School District; and (3) she acted out of personal political motives, not from the public interest, and actually hurt the public interest by exposing the School District to liability.  The School District adds that the doctrine does not apply to claims for civil conspiracy.

None of these arguments has merit.  It is immaterial that the Mayor may have allegedly engaged in some conduct before she became mayor.[12]  The operative conduct occurred after she became mayor.  Next, the doctrine applies even if the official acted with malice or lack of reasonable cause, so even if the Mayor did have a retaliatory motive or acted in a way that harmed the School District, she is still entitled to immunity.

---

[12]   We deal here with the tortious-interference claim so arguments related to conspiracy are not particularly relevant.

21

Finally, the immunity applies to "actions" by public officials, *Osiris Enterprises*, *supra*, 877 A.2d at 567, so it would cover conduct that might be actionable as a state-law civil conspiracy or some other cause of action, like a tortious-interference claim.[13]

On the basis of high public official immunity, we will therefore dismiss the tortious-interference claim against the Mayor.  We turn now to the federal civil-rights conspiracy claim against her under section 1983.

We set forth the elements of that claim and, because it bears on the mayor's arguments, the elements of a state-law claim for civil conspiracy as well.  To set forth a conspiracy claim under section 1983, a plaintiff must allege that the defendant was acting under color of state law and "deprived the plaintiff of a federal constitutional or statutory right" by way of a "'combination of two or more persons to do [an unlawful] act or to do a lawful act by unlawful means or for an unlawful purpose.'"  *Robinson v. Hicks*, 450 F. App'x 168, 175 (3d Cir. 2011) (nonprecedential).

A state-law claim for civil conspiracy is similar.  In Pennsylvania, a claim for civil conspiracy requires the plaintiff to show "that two or more persons combined or agreed with intent to do an unlawful act or to do an otherwise lawful act by unlawful means."  *Thompson Coal Co. v. Pike Coal Co.,* 488 Pa. 198, 211, 412 A. 2d 466, 472 (1979). "Proof of malice, i.e., an intent to injure, is essential in proof of a conspiracy."  *Id.,* 412 A. 2d at 472 (citation omitted); *Skipworth v. Lead Indus. Ass'n, Inc.,* 547 Pa. 224,

---

[13]    In any event, the argument is immaterial here as the civil conspiracy claim is a federal one that would not be subject to a state-law immunity.

235, 690 A.2d 169, 174 (1997).  The intent must be without justification, *Thompson Coal Co.,* 488 Pa. at 211, 412 A. 2d at 472, so only conduct intended "solely to injure" the plaintiff is actionable.  *Id.,* 412 A. 2d at 472.

Treating the conspiracy claim as one under state law, the Mayor argues that this claim fails because it does not allege that she acted "with the requisite mental state."  (Doc. 96, Supp'n Br. at p. 8).  In support, she points to the allegations of the third-party complaint that the decision to terminate Plaintiffs' employment agreements came after attorney Ellison's advice that it would not be improper to do so.  Hence, it cannot be inferred that she knew she was committing an unlawful act.  Additionally, she argues that the allegations are insufficient to show that she acted solely from malice, for even if there are allegations that she terminated the agreements to retaliate against plaintiff Kohn, other allegations indicate she did so for the additional reason of Kohn's poor job performance.

We reject these arguments.  In context, the advice Ellison gave was allegedly pretextual as part of the conspiracy to violate Plaintiffs' due-process rights, so the Mayor cannot rely on advice of counsel.  Next, a showing that the defendant acted solely from malice is not part of a federal civil-rights conspiracy claim, the claim being asserted.  Further, in any event, the allegations about plaintiff Kohn's poor job performance (third-party complaint ¶¶ 25-28) are merely allegations that Mayor

Thompson asserted that he had performed poorly, not that Kohn had actually performed poorly.

The federal civil-rights conspiracy claim against Mayor Thompson will thus proceed.

C. *Attorney Ellison's and Rhoads & Sinon's Motion to Dismiss the Cross-Claim of the Board of Control and the Mayor-Appointed Members of the Board of Control*

The defendants, Board of Control and mayor-appointed members of the Board of Control, have filed a cross-claim against attorney Ellison and Rhoads & Sinon. They allege that Ellison owed them "a duty of competent legal representation," (Doc. 102, Cross-Claim ¶ 13), that Rhoads & Sinon is vicariously liable for his actions, (*id.* ¶ 16), and that they relied on Ellison's advice in terminating the employment agreements. (*Id.* ¶ 15). They allege that if it is determined that Plaintiffs' due-process rights were violated by their terminations, then Ellison and Rhoads & Sinon are liable to them by way of contribution and indemnity for any damages they must pay to Plaintiffs or to the School District on its cross-claim, (*id.* ¶ 17), or that they "are liable over" for such damages, (*id.* ¶ 18), "jointly or severally liable over" to them, or "solely liable" to Plaintiffs or the School District.  (Doc. 102, Prayer for Relief).

24

In part, Ellison and Rhoads & Sinon move to dismiss the cross-claim because the Board of Control and the mayor-appointed members of the Board of Control have alleged no basis for indemnity or contribution.  We agree.

We have already dealt with the same issues in connection with Ellison's and Rhoads & Sinon's motion to dismiss the third-party complaint.  Under Pennsylvania law, the right to indemnity is either contractual or arises when a person not actively at fault has been compelled by a legal obligation to pay damages that have been caused by the tortious conduct of another.  *Foulke*, *supra*, 212 F.R.D. at 270.  A right to contribution arises only among joint tortfeasors.  *Id.*

The Board of Control and mayor-appointed members of the Board of Control are not entitled to indemnity because the Board members' participation in terminating Plaintiffs' employment agreements could not be considered passive conduct entitling them to indemnity and they have not established any other legal right to indemnity.

They are likewise not entitled to contribution.  The only cause of action they mention is one for legal malpractice.  Contribution exists only among joint tortfeasors, those who have a common duty to the plaintiff (even if by way of different causes of action).  Thus, as noted above, Ellison and the mayor-appointed Control Board members

cannot be joint tortfeasors because while the members had a duty to Plaintiffs, Ellison

had no duty to Plaintiffs in regard to his professional advice.[14]

We will therefore dismiss the cross-claim of defendants, Board of Control

and mayor-appointed members of the Board of Control, against attorney Ellison and

Rhoads & Sinon.

> D. *The Motion of the Mayor-Appointed Members of the Board*
> *of Control to Dismiss the School District's Cross-Claim*
> *Against Them*

The School District has filed a cross-claim against the mayor-appointed

members of the Board of Control, incorporating the material allegations of its third-party

complaint against attorney Ellison, Rhoads & Sinon, and Mayor Thompson.  In the cross-

claim, the School District makes the same federal civil-rights conspiracy claim and

tortious-interference-with-contract claim against the mayor-appointed members of the

Board of Control that the School District asserts against Ellison, Rhoads & Sinon, and

Mayor Thompson.  Similarly, the School District also seeks to hold the cross-claim

defendants solely liable to Plaintiffs, or liable to the School District for indemnity or

contribution.

---

[14]    The Board of Control and the mayor-appointed members of the Board of Control
also allege that Ellison and Rhoads & Sinon are solely liable to Plaintiffs but do not allege how
they are solely liable.  Any claim for sole liability thus fails.

The mayor-appointed members of the Board of Control move to dismiss the cross-claim.  As the mayor did, they assert they have high public official immunity from suit on both claims presented.  As we concluded above, immunity, if it applies, would only bar the tortious-interference claim, as the conspiracy claim is a federal one that state-law immunity would not cover.

Based on the foregoing discussion, we agree with the Control Board members that they are entitled to immunity on the tortious-interference claim.  First, they qualify as high public officials because of the nature of their job.  They were essentially school directors, and school directors (or school board members) have been held to be high public officials.  *See Matta v. Burton*, 721 A.2d 1164, 1166 (Pa. Commw. Ct. 1998); *Zugarek v. S. Tioga Sch. Dist.*, 214 F. Supp. 2d 468, 479 (M.D. Pa. 2002); *Poteat v. Harrisburg Sch. Dist.*, 33 F. Supp. 2d 384, 396 (M.D. Pa. 1999) (Caldwell, J.).[15]  Second, the decision to terminate Plaintiffs was within the authority the EEA conferred on them, as our previous memorandum makes clear.  *Kohn*, 817 F. Supp. 2d at 493-94.

The School District objects to conferring immunity on the Board of Control members for the following reasons, some already raised above.  First, the issue should not be resolved at the motion-to-dismiss stage but should await fact finding during

---

[15]   As noted above, the only authority the Elected School Board retained while the EEA was in effect was the authority to raise taxes.  Indeed, the School District admits that the EEA authorized the Board of Control members "to carry out all functions of the Elected School Board . . . ."  (Doc. 110, Opp'n Br. at pp. 5-6).

discovery.  Second, the School District's claims involve conduct of the cross-claim defendants before they were appointed to the Board of Control.  Third, the members were not acting in the public interest.  Fourth, the members were acting outside the scope of their authority by conspiring with the Mayor to terminate Plaintiffs' employment without regard to the liability of the School District.  For the reasons set forth above in connection with the Mayor's assertion of the immunity defense, we reject these arguments.

The School District adds two other arguments.  First, the members are being sued in their individual capacities as well as in their official capacities.  We reject this argument because the School District does not explain how this is relevant to the immunity defense.  Second, the doctrine of high public official immunity applies only to claims for libel or slander.  This is incorrect.  See *Osiris Enterprises*, *supra*, 877 A.2d at 567 (the doctrine "applies to *actions* by public officials, not just defamatory statements") (emphasis in original).

We turn now to the federal civil conspiracy claim.  Treating the claim as one under state law, the defendant Board of Control members argue it fails to allege an underlying tort, as required under state law, *see Levin v. Upper Makefield Twp.*, 90 F. App'x 653, 667 (3d Cir. 2004) (nonprecedential), since the only underlying claim is for a due-process violation suffered by Plaintiffs, not by the School District.  They also

28

characterize this point as one of standing, that the School District has no standing to assert claims belonging to Plaintiffs.

As noted above, the civil conspiracy claim is a federal one, so we need not specifically address whether there has been an "underlying tort." However, the cross-claim defendants' argument is the equivalent of asserting that the federal conspiracy claim fails because it alleges no violation of federal law, at least in regard to the School District. As noted above, a federal civil-rights claim must allege a violation of a federal right.

It is true that the conspiracy claim alleges no injury suffered by the School District. However, it does allege injury to Plaintiffs, and although the School District does not argue it, the School District has made a claim for indemnity based on the conspiracy claim. It appears that the indemnity claim is valid, even though the School District asserts no injury to itself. The School District is the principal here and the mayor-appointed members of the Board of Control are the agents. As exemplified by *Builders Supply Co. v. McCabe*, 366 Pa. 322, 77 A.2d 368 (1951), it appears that the School District can claim indemnity by way of the civil conspiracy claim because it is liable purely because of the actions of the moving Control Board members in voting to terminate Plaintiffs' employment agreements. *Id.* at 325, 77 A.2d at 371 (indemnity "enures to a person who, without active fault on his own part, has been compelled, by reason of some

legal obligation, to pay damages occasioned by the initial negligence of another, and for which he himself is only secondarily liable").

The mayor-appointed members of the Board of Control next argue that the civil conspiracy claim fails because: (1) they could not have conspired to perform an unlawful act because it is alleged that they relied on the advice of counsel; and (2) acting on advice of counsel also negates the malice element of the claim.

We reject these arguments.  As noted above, in context, the advice Ellison gave was allegedly pretextual as part of the conspiracy to violate Plaintiffs' due-process rights, so the moving defendants cannot rely on advice of counsel to defeat the claim. Additionally, a showing that a defendant acted solely from malice is not part of a federal civil-rights conspiracy claim, the claim being asserted.

IV. *Conclusion*

Based on the foregoing analysis, the claims in the third-party complaint against Ellison and Rhoads & Sinon for sole liability, indemnity and contribution on the legal malpractice claim are dismissed.  The following claims in the third-party complaint against Ellison and Rhoads & Sinon remain: the School District's claim for contribution on the federal civil-rights conspiracy claim and on the tortious-interference claim and the School District's independent claim for legal malpractice against Ellison and Rhoads & Sinon.  In regard to the claims against Mayor Thompson in the third-party complaint, the

tortious-interference claim is dismissed on the basis of high public official immunity but the federal civil-rights conspiracy claim remains.  On the cross-claim of the School District against the mayor-appointed members of the Board of Control, the tortious-interference claim is dismissed on the basis of high public official immunity but the federal civil-rights conspiracy claim remains.  The cross-claim of the Board of Control against Ellison and Rhoads & Sinon is dismissed.

We will issue an appropriate order.


 /s/ William W. Caldwell
William W. Caldwell
United States District Judge


Date: May 7, 2012

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

GERALD KOHN, *et al.*,                                      :
             Plaintiffs                         :
                                        :
             v.                                 :        CIVIL NO. 1:11-CV-109
                                          :
SCHOOL DISTRICT OF THE CITY OF              :
HARRISBURG, *et al.*,                                     :
             Defendants                      :

O R D E R

AND NOW, this 7th day of May, 2012, it is ordered that:

   1.  The motion (Doc. 88) of third-party defendant Mayor
Linda Thompson to dismiss the third-party complaint (Doc.
83) against her is denied as to the federal civil-rights
conspiracy claim for contribution and granted as to the
tortious-interference claim.  The tortious-interference claim is
hereby dismissed.

   2.  The motion (Doc. 100) of third-party defendants James
E. Ellison and Rhoads & Sinon to dismiss the third-party
complaint (Doc. 83) against them is granted as to any claims
based on sole liability and for indemnity and contribution on
the legal malpractice claim.  The motion is denied for
contribution as to the School District's federal civil-rights
conspiracy claim and the tortious-interference claim.  The
motion is also denied for the independent claim for legal
malpractice.

3.  The motion (Doc. 103) of the mayor-appointed members of the Board of Control to dismiss the School District's cross-claim (Doc. 84) is denied as to the federal civil-rights conspiracy claim for contribution and granted as to the tortious-interference claim.  The tortious-interference claim is hereby dismissed.

4.  The motion (Doc. 107) of cross-claim defendants James E. Ellison and Rhoads & Sinon to dismiss the cross-claim against them by the Board of Control and the mayor-appointed members of the Board of Control is granted and the cross-claim (Doc. 102) is hereby dismissed.

5.  The stay of discovery imposed in the orders of February 27, 2012, (Doc. 95) and April 2, 2012, (Doc. 114) is vacated.


 /s/ William W. Caldwell
William W. Caldwell
United States District Judge