IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

GERALD KOHN, *et al.*,              :
    Plaintiffs              :
                                    :
    v.                      :    CIVIL NO. 1:11-CV-109
                                    :
SCHOOL DISTRICT OF THE CITY         :
OF HARRISBURG, *et al.*,            :
    Defendants              :
                                    :
    v.                      :
                                    :
LINDA THOMPSON, *et al.*,           :
    Third-party Defendants  :

## M E M O R A N D U M

I. *Introduction*

        By memorandum and order, dated August 16, 2012, we denied the motion

for judgment on the pleadings filed by third-party defendants, James E. Ellison, Esq., and

Rhoads & Sinon, the law firm where he practices. *Kohn v. Sch. Dist. of the City of

Harrisburg*, 2012 WL 3560822 (M.D. Pa.). The motion sought dismissal of the third-party

complaint filed against them by the defendant, Harrisburg School District. We are

considering Ellison's and Rhoads & Sinon's motion for reconsideration of that order. The

issue presented is whether in a 42 U.S.C. § 1983 action defendants can make a claim for

contribution. In our August 16 memorandum, we decided that defendants could. That

memorandum provides sufficient background, so we deal here solely with the third-party

defendants' arguments on reconsideration.

II.  *Standard of Review*

The August 16 order was interlocutory because, having denied the third-party defendants' motion for judgment on the pleadings, it contemplated further proceedings in this court.  *See Aluminum Co. of America v. Beazer East, Inc.*, 124 F.3d 551, 557 (3d Cir. 1997); *In re Anthanassious*, 418 F. App'x 91, 95 (3d Cir. 2011) (nonprecedential) (bankruptcy court order granting an extension of time to file objections was interlocutory because the court still had to grant or deny the objections); *M.K. v. Tenet*, 196 F. Supp. 2d 8, 12 (D. D.C. 2001).

Since it was an interlocutory order, the court may revise it "when consonant with justice to do so." *United States v. Jerry*, 487 F.2d 600, 605 (3d Cir. 1973); *In re Anthanassious*, *supra*, 418 F. App'x at 95 (quoting *Jerry*).  More specifically, a trial court may revise an interlocutory order if that order "might lead to an unjust result." *Anthanassious*, *supra*, 418 F. App'x at 95 (quoted case omitted).

Thus the order is not subject to the stricter standard employed for a challenge under F. R. Civ. P. 59(e) to a final order, *In re Anthanassious*, 418 F. App'x 91, 96 n.5 (3d Cir. 2011)(nonprecedential), as the parties think.[1]  Rule 59(e) covers only final

---

[1]  As the parties recognize, the Rule 59(e) standard deals in part with whether the court committed "manifest errors of law," *North River Ins. Co. v. Cigna Reinsurance Co.*, 52 F.3d 1194, 1218 (3d Cir. 1995).  Also, the moving party may not present new arguments on a Rule 59(e) motion. *Blanchard v. Gallick*, No. 09–1875, 2011 WL 1878226, at *1 (M.D. Pa. May 17, 2011)(Caldwell, J.)(citing *Ogden v. Keystone Residence*, 226 F. Supp. 2d 588, 606 (M.D. Pa. 2002)).  In contrast, on a motion to reconsider an interlocutory order, we exercise broad discretion in deciding whether to reverse that order.

We note that the third-party defendants assert that in our August 16 memorandum, we sua sponte considered whether 42 U.S.C. § 1988(a) permitted a contribution claim.  They are

judgments or orders.  As Rule 59(e) states: "A motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment," with "Judgment" being defined as "includ[ing] a decree and any order from which an appeal lies."  Fed. R. Civ. P. 54(a).  An appeal did not lie from the August 16 order because it adjudicated fewer than all the claims by all the parties.  As F. R. Civ. P. 54(b) states:

> **Judgment on Multiple Claims or Involving Multiple Parties.**  When an action presents more than one claim for relief — whether as a claim, counterclaim, crossclaim, or third-party claim — or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay.  *Otherwise, any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.*

Fed. R. Civ. P. 54(b)(emphasis added).  With this understanding of our standard of review, we examine the third-party defendants' motion.  That motion is cognizable as a motion for reconsideration under Local Rule 7.10.

---

mistaken.  The argument that section 1988(a) did not permit such a claim was made in their brief in support of their motion for judgment on the pleadings when they argued that a contribution claim was inconsistent with the deterrence goal of section 1983.  (Doc. 126 at pp. 5 and 7, citing *Crews v. County of Nausau*, 612 F. Supp. 2d 199, 209-10, 212 (E.D.N.Y. 2009)).  In fact, the third-party defendants stated that they were conducting a section 1988(a) analysis in their brief, although they believed such an analysis was not necessary.  (*Id.* at p. 4 n.2).  Nonetheless, it is immaterial to our scope of review that the third-party defendants are presenting new arguments in support of their section 1988(a) analysis.

III.    *Discussion*

        In our August 16 memorandum, we decided that the defendant School District could pursue its contribution claim by reasoning as follows.  Section 1983 creates no statutory right to contribution, either express or implied, *Kohn*, *supra*, 2012 WL 3560822, at *2 n.5, and there is no federal common-law right to contribution.  *Id.* at *5.  However, 42 U.S.C. § 1988(a) authorizes us to borrow Pennsylvania state law on contribution found in The Uniform Contribution Among Tort-feasors Act, 42 Pa. Con. Stat. §§ 8321–8327 (West 2007).  In conformity with section 1988's requirement that any borrowed state law not be inconsistent with federal law, we decided that Pennsylvania law was not inconsistent with federal law, more specifically, that state law did not conflict with section 1983's goal of deterring unconstitutional conduct.  *Id.* at 6.  We also decided that allowing contribution served the other goal of section 1983, compensation of the victim.  *Id.*

        The third-party defendants say that our reliance on section 1988(a) was mistaken.  They take the position that section 1988(a) may only be invoked "'for the protection' of the victims of civil-rights violations."  (Doc. 146, Supp'n Br. at p. 4).  Thus it could not be used to assist a civil-rights defendant in making a claim for contribution.  In support of this position, the third-party defendants make three arguments.

        First, they quote the statutory language itself, in pertinent part, with emphasis on two portions:

(a) **Applicability of statutory and common law**
  The jurisdiction in civil and criminal matters conferred on the district courts by the provisions of titles 13, 24, and 70 of the Revised Statutes *for the protection of all persons in the United States in their civil rights, and for their vindication*, shall be exercised and enforced in conformity with the laws of the United States, so far as such laws are suitable to carry the same into effect; but in all cases where they are not adapted to the object, *or are deficient in the provisions necessary to furnish suitable remedies and punish offenses against law*, the common law, as modified and changed by the constitution and statutes of the State wherein the court having jurisdiction of such civil or criminal cause is held, so far as the same is not inconsistent with the Constitution and laws of the United States, shall be extended to and govern the said courts in the trial and disposition of the cause . . . .

42 U.S.C.A. § 1988(a)(emphasis added by third-party defendants). Based on the language referring to the "protection of all persons . . . in their civil rights," the third-party defendants argue that section 1988(a) is limited to benefitting civil-rights plaintiffs. In support of this statutory interpretation, they cite *Wright v. Reynolds*, 703 F. Supp. 583 (N.D. Tex. 1988), where the court concluded that the statutory language indicates that 1988(a) is only intended to benefit a civil-rights plaintiff, and cannot be used by a civil-rights defendant to borrow state law.

Second, they argue the legislative history supports this interpretation of section 1988(a), citing *Koch v. Mirza*, 869 F. Supp. 1031 (W.D.N.Y. 1993). Third, they cite three cases, *Uboh v. Reno*, 141 F.3d 1000 (11th Cir. 1998); *Hall v. Wooten*, 506 F.2d 564 (6th Cir. 1974); and *Smith v. Wickline*, 396 F. Supp. 555 (W.D. Okla. 1975), that supposedly show the proper use of section 1988(a), to "advance[ ] directly the goals of

Section 1983 –- usually by expanding the reach of the civil-rights laws for the benefit of the plaintiffs."  (Doc. 146, Supp'n Br. at p. 5).

We reject the first argument.  The statutory language by itself gives no indication that section 1988(a) can only be used for a plaintiff's benefit.  The phrase "for the protection of all persons in the United States in their civil rights, and for their vindication" is simply a description of "the provisions of titles 13, 24, and 70 of the Revised Statutes" that section 1988(a) applies to.

As the third-party defendants note, *Wright*, *supra*, does interpret section 1988(a)'s language as limiting its scope to civil-rights plaintiffs.  As the court stated there: "However, *of paramount importance* with regard to a defendant's alleged rights to contribution and indemnification is the fact that Congress, through section 1988, only allowed courts to fashion a remedy 'for the protection of all persons in the United States in their civil rights, and for their vindication' of those rights."  *Id.* at 592 (emphasis in original).  We respectfully disagree with *Wright*'s interpretation of the statutory language. In our view, there is nothing in that language supporting the limiting gloss *Wright* imposes on section 1988(a).

In regard to legislative history, *Koch* delved into the legislative histories of the Civil Rights Act of 1866 and the Civil Rights Act of 1871 in deciding that section 1988

-6-

should not be used to borrow state law to allow contribution in a section 1983 action.[2]  As

the third-party defendants quote from *Koch*:

> The historic debates in Congress on both statutes make
> quite clear that their primary objectives were to establish and
> protect federal civil rights and thereby remove from the legal
> system the discrimination created by slavery and its incidents.
> Senator Trumbull, Chairman of the Senate Judiciary
> Committee, in discussing the 1866 Act prior to its passage,
> stated, "the purpose of the bill under consideration is to
> destroy all these discriminations, and to carry into effect the
> constitutional [Article XIII] amendment." Cong. Globe, 39th
> Cong., 1st Sess. 474 (1866).  Referring to the clause
> authorizing the use of state law, which now appears in § 1988,
> Senator Trumbull stated, "[t]he other provisions of the bill
> contain the *necessary machinery to give effect to* what are
> declared to be the rights of all persons in the first section."  *Id.*
> (emphasis added).

(Doc. 146, Supp'n Br. at p. 4 (quoting *Koch*, *supra*, 869 F. Supp. at 1041).  From this

passage, the third-party defendants conclude that the legislative history indicates that

"Congress intended Section 1988(a) to strengthen the remedies available to those

claiming violations of their civil rights – not of those alleged to have violated those rights."

(Doc. 146, Supp'n Br. at p. 4 n.1).

We reject this reliance on legislative history for two reasons.  First, the

legislative history makes the unremarkable assertion that section 1988 was intended to

effectuate substantive civil rights; in the quoted passage, the rights conferred in the 1866

Act.  But the quoted legislative history does not say that is the only goal of section 1988.

---

[2] Legislative history is not the only support *Koch* had for declining to find a right to
contribution in section 1983 actions, but the one the third-party defendants focus on.  *Koch*
used the legislative history to make a larger point.

Second, in any event, the Supreme Court has interpreted section 1998(a) as requiring "a three-step process," and that process simply tracks the operative language of the statute itself. It imposes no requirement that the state law being borrowed must benefit the civil-rights plaintiff. That three-step process is:

> First, courts are to look to the laws of the United States "so far as such laws are suitable to carry [the civil and criminal civil rights statutes] into effect." *Ibid.* If no suitable federal rule exists, courts undertake the second step by considering application of state "common law, as modified and changed by the constitution and statutes" of the forum State. *Ibid.* A third step asserts the predominance of the federal interest: courts are to apply state law only if it is not "inconsistent with the Constitution and laws of the United States." *Ibid.*

*Burnett v. Grattan*, 468 U.S. 42, 47-48, 104 S.Ct. 2924, 2928, 82 L.Ed.2d 36 (1984). *See also Fontroy v. Owens*, 150 F.3d 239, 242-43 (3d Cir. 1998)(quoting *Burnett*).

That section 1988(a) is not limited to borrowing state laws that benefit a civil-rights plaintiff is reinforced by *Robertson v. Wegmann*, 436 U.S. 584, 98 S.Ct. 1991, 56 L.Ed.2d 554 (1978). In that case, the Supreme Court borrowed a state law on the survival of actions that had the effect of terminating the plaintiff's section 1983 action after he died before trial. In its opinion, the Court made the following observation:

> It is true that § 1983 provides "a uniquely federal remedy against incursions under the claimed authority of state law upon rights secured by the Constitution and laws of the Nation." *Mitchum v. Foster*, *supra*, 407 U.S., at 239, 92 S.Ct., at 2160. That a federal remedy should be available, however, does not mean that a § 1983 plaintiff (or his representative) must be allowed to continue an action in disregard of the state law to which § 1988 refers us. A state statute cannot be considered "inconsistent" with federal law merely because the statute causes the plaintiff to lose the litigation. If success of

> the § 1983 action were the only benchmark, there would be
> no reason at all to look to state law, for the appropriate rule
> would then always be the one favoring the plaintiff, and its
> source would be essentially irrelevant. But § 1988 quite
> clearly instructs us to refer to state statutes; it does not say
> that state law is to be accepted or rejected based solely on
> which side is advantaged thereby.

*Id.* at 593, 98 S.Ct. at 1996-97. In *Robertson*, the state law did not benefit the plaintiff;

indeed it abated his action, yet the Supreme Court still applied it.

We therefore conclude that the mere fact that a state law does not benefit a

civil-rights plaintiff does not prohibit the use of section 1988(a) in a civil-rights claim.[3] We

turn now to the third-party defendants' remaining argument for reconsideration, that we

erred in deciding: (1) that allowing contribution does not conflict with section 1983's goal

of deterring unconstitutional conduct; and (2) that contribution actually serves section

1983's other goal, compensation of victims of civil-rights violations. *Kohn*, *supra*, 2012

WL 3560822, at *6 and n.13.

We deal first with the argument concerning deterrence. On this issue, the

third-party defendants first argue that we were mistaken in not agreeing with the majority

of courts that have decided that allowing contribution conflicts with the goal of deterrence.

These courts reason that if civil-rights violators know that they can use a contribution

claim to shift to others some of the damage they may cause, they may not refrain from

---

[3] As noted above, the third-party defendants made a third argument relying on *Uboh v. Reno*, 141 F.3d 1000 (11th Cir. 1998); *Hall v. Wooten*, 506 F.2d 564 (6th Cir. 1974); and *Smith v. Wickline*, 396 F. Supp. 555 (W.D. Okla. 1975), that the proper use of section 1988(a) is to advance directly the goals of Section 1983. Based on our analysis above, we reject this argument. We have also reviewed the cited cases and conclude they do not support the third-party defendants' argument.

committing the unconstitutional conduct.  *See Crews v. County of Nausau*, 612 F. Supp.

2d 199, 212 (E.D.N.Y. 2009); *Mason v. City of New York,* 949 F. Supp. 1068, 1079

(S.D.N.Y. 1996).

We rejected this reasoning because we thought that "deterrence is served

as long as the violators are aware that they may be liable in damages, even if they may

lessen the impact by obtaining contribution from another party."  Kohn, 2012 WL

3560822, at *6.  In the third-party defendants' view, this means we decided that

borrowing state law on contribution was proper under section 1988(a) only as long as it

did not "completely undermine" the goal of deterrence.  (Doc. 146, Supp'n Br. at pp. 8-9).

They argue that even a lessening of the liability a defendant may be exposed to conflicts

with section 1983, as the majority of courts have recognized.  They also argue that no

other court has ever understood "inconsistent" in section 1988(a) to require the state law

to "completely undermine[ ]" the goal of the statute.  (*Id.* at pp. 9-10).

This argument does not persuade us.  We did not require the state law to

"completely undermine" section 1988(a), and we did not use those words.  Nor can our

ruling essentially be considered as requiring a complete undermining.  We simply

decided that anyone contemplating being a civil-rights tortfeasor would be sufficiently

deterred by the prospect of being liable in damages, even if he thought about the

possibility of lessening those damages by seeking contribution from a joint tortfeasor.  In

short, we simply disagreed with other courts that have said that the possibility of

contribution lessened the deterrence goal of section 1983.  Moreover, giving the issue

more thought, we think it is not just the possibility of damages, however lessened by contribution from a joint tortfeasor, that would deter a defendant, but the other burdens of litigation that would also sufficiently deter him, regardless of the possibility of contribution. These burdens include being subject to suit itself, the time and expense of discovery, and defending the claim at trial. *Cf. Robertson*, *supra*, 436 U.S. at 592, 98 S.Ct. at 1996 ("given that most Louisiana actions survive the plaintiff's death, the fact that a particular action might abate surely would not adversely affect § 1983's role in preventing official illegality . . . . A state official contemplating illegal activity must always be prepared to face the prospect of a § 1983 action being filed against him").

We also decided that allowing contribution served deterrence in a direct way, by citing *Glus v. G.C. Murphy Co.,* 629 F.2d 248, 252 (3d Cir. 1980)("Without a right of contribution a wrongdoer may escape liability for his actions because of the happenstance of the plaintiff's choice of defendants."). The third-party defendants correctly infer what we meant by this, that the possibility of being joined as a third-party defendant on a contribution claim, not just being sued by the plaintiff directly, would deter illegal acts as well.

The third-party defendants argue that it is not plausible that a civil-rights tortfeasor would be deterred by the possibility that, if the victim sued other wrongdoers but not him, he might be joined as a third-party defendant. We reject this argument. *See Northwest Airlines, Inc. v. Transport Workers Union of America,* 451 U.S. 77, 88, 101 S.Ct. 1571, 1579, 67 L.Ed.2d 750 (1981)("Recognition of the right [of contribution] reflects

the view that when two or more persons share responsibility for a wrong, it is inequitable to require one to pay the entire cost of reparation, and it is sound policy to deter all wrongdoers by reducing the likelihood that any will entirely escape liability.")(footnote and cited authority omitted). We also note that, in any event, resolution of this issue is not crucial as we have decided that a tortfeasor is already sufficiently deterred by the prospect of being named as a defendant by the victim.

We turn now to the third-party defendants' argument concerning compensation. In our August 16 memorandum, we said that "allowing contribution serves the other goal of section 1983, compensation of the victim because it allows a defendant to bring into the case a party who can provide additional compensation." *Kohn*, *supra*, 2012 WL 3560822, at *6. In a footnote, we added that this would be "accomplished indirectly; the third-party defendant would only be liable to the defendant, but that liability would assist in payment of any judgment the plaintiff obtained against the defendant." *Id.* at *6 n.13.

The third-party defendants argue that this position is mistaken because it would be relevant only if the defendants and third-party defendants were jointly and severally liable to Plaintiffs, and our position ignores 42 Pa. Con. Stat. § 7102, a change in Pennsylvania law known to some as "The Fair Share Act of 2011." With some exceptions, this act changes joint and several liability to several liability, *id.* § 7102(b.1), meaning that defendants and third-party defendants are only liable to the plaintiff for that portion of the damages for which the jury finds them responsible. Hence, as the

argument goes, attorney Ellison could not be called upon by the defendant School District to make up any damages the School District could not pay, and our "compensation rationale" is "far weaker" than suggested by our memorandum. (Doc. 146, Supp'n Br. at p. 8).

Defendant's argument has no bearing on our ruling that section 1988(a) allows us to borrow Pennsylvania statutory law on contribution for two reasons. First, a benefit to the plaintiff is not necessary to invoke section 1988(a), as we have already decided. Second, section 1988(a) requires a conflict with federal law to disqualify a state law, and the third-party defendants' argument, if true, only establishes that allowing contribution may not, or only weakly serve, section 1983's goal of compensating victims.

It also appears that invoking section 7102 here is incorrect since the act applies only to causes of action that accrue after its effective date, June 28, 2011. *See* 42 Pa. Con. Stat. Ann. § 7102 (West Supp. 2012)(Historical and Statutory Notes -- Act 2011-17 Legislation). In the instant case, according to the Amended Complaint (Doc. 24), plaintiff Kohn's and plaintiff Botel's causes of action accrued on March 15, 2010, and plaintiff Hostetler's cause of action accrued on May 17, 2010. The action itself was initiated in state court on December 7, 2010, a little less than seven months before section 7102 was enacted. It thus appears that our original analysis is still good for this action. *See Essex Ins. Co. v. Rayski, Inc.*, No. 07-CV-9, 2007 WL 1965537, at *2-3 (E.D. Pa. July 2, 2007).

We note that the third-party defendants have sought reconsideration of our "determination" that there are no grounds for certifying our order of August 16, 2012, for interlocutory appeal under 28 U.S.C. § 1292(b). There is no procedural basis for seeking reconsideration of that determination. The third-party defendants never filed a motion for a section 1292(b) certification, and no order was entered denying certification, only an order denying the motion for judgment on the pleadings. Reconsideration can only be sought for an order, see Local Rule 7.10, not for comments in a memorandum about a request made in a brief. *See Kohn*, 2012 WL 3560822, at *6 ("Since we have decided to allow contribution, we will comment on attorney Ellison's and Rhoads & Sinon's request (in their brief) under 28 U.S.C. § 1292(b) for an interlocutory appeal on this issue."). The third-party defendants are free to file a motion seeking certification. See Fed. R. Civ. P. 7(b)(1)("A request for a court order must be made by motion.").

We will issue an appropriate order.


　/s/ William W. Caldwell
William W. Caldwell
United States District Judge


Date: October 31, 2012

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

GERALD KOHN, *et al.*,    :
    Plaintiffs    :
        :
    v.    :    CIVIL NO. 1:11-CV-109
        :
SCHOOL DISTRICT OF THE CITY    :
OF HARRISBURG, *et al.*,    :
    Defendants    :
        :
    v.    :
        :
LINDA THOMPSON, *et al.*,    :
    Third-party Defendants    :

*O R D E R*

AND NOW, this 31st day of October, 2012, it is ORDERED that the motion

(Doc. 145) for reconsideration filed by third-party defendants, James E. Ellison, Esq., and

Rhoads & Sinon, is DENIED.


    /s/ William W. Caldwell
    William W. Caldwell
    United States District Judge